AMISUB (PSL), INC., d/b/a AMI St. Luke's Hospital, AMI Presbyterian Denver Hospital, Inc., and AMI Presbyterian Aurora Hospital, Inc. Plaintiffs,

v.

The STATE OF COLORADO DEPARTMENT OF SOCIAL SERVICES, and Irene M. Ibarra, Executive Director of the State of Colorado, Department of Social Services, Defendants.

Action No. 88–F–1024.

United States District Court, D. Colorado.

Sept. 14, 1988.

L. Richard Freese, Jr., Sharon E. Caulfield, Denver, Colo., Patric Hooper, Los Angeles, Cal., for plaintiffs.

Wade Livingston, Sue Warren, Denver, Colo., for defendants.

ORDER

SHERMAN G. FINESILVER, Chief Judge.

This matter comes before the court on a trial to the court on the merits. Plaintiffs

challenge the State of Colorado's system for reimbursment of Medicaid costs to hospitals. Plaintiffs argue that the State Plan violates 42 U.S.C. § 1396a(a), because the State Plan does not provide for meeting the reasonable costs of hospitals which serve Medicaid patients. Jurisdiction is proper before this court under 28 U.S.C. § 1331.

The court has examined the pleadings, briefs and argument of counsel, and enters these findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff hospitals are duly licensed by the State of Colorado to provide acute care hospital services. Plaintiff hospitals also participate in the Colorado Medicaid program as providers of inpatient hospital services. Plaintiff hospitals function as tertiary care centers for the Denver area.

2. Defendant Irene M. Ibarra is the Executive Director of the State Medicaid Agency. Defendant State of Colorado Department of Social Services is the single State agency designated by the federal government to administer the Medicaid program in Colorado.

3. Title XX of the Social Security Act, 42 U.S.C. §§ 1397–1397f, the Medicaid law, authorizes federal grants to States for medical assistance to low-income persons who are aged, blind, disabled, or members of families with dependant children. The program is jointly financed by the federal and state governments and administered by the States. The States, in accordance with federal law, decide eligible beneficiary groups, types and ranges of services, payment level for services, and administrative and operative procedures. Payment for services are made directly to the individuals or entities that furnish the services. 42 C.F.R. § 430.0.

4. For hospital admissions occurring on or after July 1, 1988, the State Medicaid Agency has implemented a Diagnostically Related Group (DRG) type system for reimbursing Colorado hospitals for providing inpatient hospital services to Medicaid beneficiaries. The system calls for classifications of ailments or hospitalizations, each of which is assigned a relative weight. When a hospital has treated a medicaid patient, the relative weight is multiplied by a base rate to determine the payment to the hospital. Plaintiff hospitals do not challenge the DRG system itself, or the relative weights assigned to each DRG. Rather, they challenge the base rates.

5. A different base rate was determined for each of three peer groups of hospitals: (a) urban hospitals, (b) rural hospitals, and (c) rural referral centers. Therefore, hospitals within each peer group are assumed to have similar costs. In addition, a Base Rate is defined for out-of-state hospitals.

6. The base rates were computed as follows: First, reimbursable Medicare costs are determined through reasonable cost standards set forth in 42 U.S.C. § 1395x(v)(1)(A) and 42 C.F.R. § 413.1 et seq. Not all actual costs incurred by hospitals are allowable costs under these Medicare reasonable cost principles. Moreover, Allowable Costs are only reimbursed to the extent they are reasonable in amount. To calculate the Medicaid base rate for each peer group under 10 C.C.R. 2505–10, § 8.356.20, an average Medicare reimbursable cost per discharge for each peer group is calculated. This average is based on the total costs obtained from the peer group hospitals' most recently audited Medicare/Medicaid cost reports (currently the 1985 reports) divided by the number of Medicare discharges for each hospital. The Medicare allowable costs of each hospital are adjusted to neutralize cost differences between hospitals in the peer groups resulting from differences in the severity of the conditions of the Medicare patients treated at each hospital. The peer group hospitals' average Medicare cost per discharge obtained from the 1985 cost report is updated by an inflation factor (currently approximately 3% per year) to reflect current input prices. Then, the Medicare average cost per discharge is multiplied by .88 to obtain the Medicaid average cost per discharge (thus assuming that Medicaid costs are lower than Medicare costs).

7. Finally, the State Medicaid Agency multiplies the figure obtained above by .54

(that is, reduces it by 46%). The .54 figure is known as the final adjustment factor, and is based on the sums historically appropriated by the State legislature for Medicaid payment for inpatient hospital services. It is the ratio of the Legislature's budget appropriation to the figure obtained through the process described in the last paragraph. Thus, the figure has no relation to the actual costs of hospital services.

8. The Colorado State Legislature has appropriated $57,427,405 for reimbursing inpatient hospital services for the fiscal year beginning July 1, 1988 (fiscal year 1989). Of that sum, approximately $41,000,000 is projected to be paid for hospital services covered by the new DRG system. Because the total sum to be paid for inpatient hospital services is limited to the total sum appropriated by the State Legislature, there will have to be a concomitant decrease in payments to other categories of inpatient hospital services if payments in any category exceed the sums projected, unless the State Legislature appropriates supplemental funds. The State Medicaid Agency has also requested permission from the Legislature to overspend its 1988 fiscal year budget for inpatient hospital services since the sum appropriated for that year did not cover the actual amounts required to be paid to providers under the previous system for reimbursing providers of inpatient hospital services. If permission to overspend is granted, the additional funds will be paid out of the 1989 fiscal year appropriation. The amount to be paid by the State Medicaid Agency to all hospital providers exclusive of the final adjustment factor is projected to exceed $106,000,000 for services provided to Medicaid patients during the 1989 fiscal year. If the number of Medicaid patients exceeded projections, this sum would increase.

9. Because the final adjustment factor reduces the figure obtained through the process in paragraph 7, which roughly represents costs to the hospitals of providing Medicaid patient care, by 46%, no Colorado hospital recovers its actual costs from the Medicaid program. Some of these Colorado hospitals are efficiently and economically operated.

10. The new DRG system effective July 1st, 1988 was intended to be budget neutral by the State Medicaid Agency. The system is not intended to save state revenues, but only to be a more realistic mechanism for distributing Medicaid reimbursements.

11. The State Plan relies on expenditure levels from previous years to determine the level of expenditure for the current year. Since Medicaid reimbursements under the new system are substantially identical to reimbursements in previous years, it has not been demonstrated that the new system would result in a loss of Medicare patient access to medical care in Colorado.

12. Under the Medicaid law, each State is required to submit for approval by the Health Care Financing Administration ("HCFA") a State Plan for the provision of medical assistance to eligible beneficiaries. 42 U.S.C. § 1396. The State Plan must comply with the requirements of 42 U.S.C. § 1396a and the applicable federal regulations with respect to the setting of Medicaid payment rates. 42 C.F.R. § 447.200. Modification of payment rates requires a State Medicaid Agency to develop a State Plan Amendment which must be approved by HCFA. 45 C.F.R. § 205.5.

13. Under 42 U.S.C. Section 1396a(a)(13)(A) a State Plan must, *inter alia*, provide for payment for hospital services through the use of rates which the State finds are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated facilities in the provision of services in conformity with applicable State and Federal laws. *See also* 42 C.F.R. Section 447.204. The State Plan must be satisfactory to the HCFA.

14. HFCA's review of the proposed State Plan is cursory. They do not review the State Medicaid Agency's standards of payment or actual payment rates. Rather, the inquiry is limited to a determination of whether the documentation submitted by the State Medicaid Agency complies with procedural requirements.

CONCLUSIONS OF LAW

1. Since the review of this court of the State Medicaid Plan covers matters not considered by the HCFA, the doctrine of primary jurisdiction does not require this court to defer ruling on the merits of the plaintiffs' claim until after HCFA has made its determination. The plaintiffs do not ask us to review the assurances made to the HCFA, but only the validity of the State Medicaid Agency's findings.

2. The review of this court is limited to the issue of whether the findings of the State Medicaid Agency were arbitrary and capricious. *Colorado Health Care Assoc. v. Colorado Department of Social Services*, 842 F.2d 1158, 1164 (10th Cir.1988).

3. The fact that the State Medicaid Agency adjusted repayment rates according to State budgetary constraints does not invalidate the agency's findings. In *Colorado Health*, the Tenth Circuit Court of Appeals construed the same provision of law at issue here, 42 U.S.C. § 1396a(a)(13)(A). *Id.* at 1165. The court held that states can consider budgetary constraints as a factor in amending medicaid payment methods. *Id.* at 1168. Similarly, the State Medicaid Agency is entitled to rely on budgetary considerations in setting repayment rates.

4. The State's method of determining repayment rates, which essentially relies on an extrapolation from the expenditures from past years, is also legitimate. While the system may not be perfect, it is not arbitrary and capricious. Furthermore, the fact that no Colorado hospital recovers its costs from the reimbursment program does not make the system arbitrary and capricious.

ACCORDINGLY, the court finds that the defendants have not violated federal law. The court directs the Clerk to enter judgment in favor of defendants and against plaintiff. It is further ordered that defendants have their costs of action.