879 F.2d 789
 26 Soc.Sec.Rep.Ser. 271, Medicare&Medicaid Gu 37,968
AMISUB (PSL), INC., d/b/a AMI St. Luke's Hospital, Inc., AMI
Presbyterian Denver Hospital, Inc., and AMI
Presbyterian Aurora Hospital, Inc.,
Plaintiffs/Appellants,
v.
The STATE OF COLORADO DEPARTMENT OF SOCIAL SERVICES, and
Irene M. Ibarra, Executive Director of the State
of Colorado, Department of Social
Services, Defendants/Appellees.
 No. 88-2482.
 United States Court of Appeals,
Tenth Circuit.
 July 11, 1989.
Rehearing Denied Aug. 31, 1989.
 
 Patric Hooper (L. Richard Freese, Jr., and Sharon E. Caulfield of Davis, Graham & Stubbs, Denver, Colo., with him on the briefs), Hooper, Lundy & Bookman, Inc., Los Angeles, Cal., for plaintiffs/appellants.
 Wade S. Livingston, Asst. Atty. Gen. (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen. and Richard H. Forman, Sol. Gen., Denver, Colo., with him on the brief), for defendants/appellees.
 Wayne J. Fowler of Saunders, Snyder, Ross & Dickson, P.C., Denver, Colo., on the briefs, for amicus curiae American Hosp. Ass'n and amicus curiae Colo. Hosp. Ass'n.
 Michael F. Anthony, Jeffrey M. Teske, Lawrence E. Singer, Chicago, Ill., on the brief, for amicus curiae American Hosp. Ass'n.
 Before ANDERSON, BARRETT and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 Plaintiffs, three licensed Colorado hospitals (hereinafter "appellants" or "Hospitals") appeal from a final judgment against them. 698 F.Supp. 217. As Medicaid providers, they challenged the State of Colorado's system for reimbursement of inpatient hospital services as violative of 42 U.S.C. Sec. 1396 et seq. (1989 Supp.) (hereinafter "Medicaid Act"). On appeal, appellants allege the district court had jurisdiction based on 28 U.S.C. Sec. 1331, 28 U.S.C. Sec. 1361, and 42 U.S.C. Sec. 1983. The district court correctly held jurisdiction was based on 28 U.S.C. Sec. 1331 since plaintiffs were challenging Colorado's compliance with the Medicaid Act in a 42 U.S.C. Sec. 1983 action.[1] We are in accord with the district court on the jurisdictional basis, and, furthermore, hold that 28 U.S.C. Sec. 1361 (1976), the federal mandamus statute, is not a jurisdictional basis in this case. The named defendants in the district court and appellees here are the State of Colorado Department of Social Services (CDSS) and Irene M. Ibarra, its Executive Director. No relief against state officials or state agencies is afforded by Sec. 1361.[2]
 
 
 2
 On appeal, appellants present the following issues:
 
 
 3
 1. Did the District Court improperly limit its review of the agency decision by determining only whether the Medicaid payment rates in question were arbitrarily and capriciously established?
 
 
 4
 2. Were the Medicaid payment rates in question established by Appellees ("the State Medicaid Agency") in accordance with the procedures required by the governing federal Medicaid statute and regulations?
 
 
 5
 3. Are the Medicaid payment rates in question authorized by and consistent with the governing federal Medicaid statute and regulations?
 
 
 6
 4. Are the Medicaid payment rates in question established by the State Medicaid Agency arbitrary and capricious?
 
 
 7
 In response, the appellees contend that (1) the Hospitals have no statutory right to a particular Medicaid rate, i.e., "42 U.S.C. Sec. 1396a(a)(13)(A) is not the kind of statute that creates enforceable rights under 42 U.S.C. Sec. 1983"; (2) the Hospitals are not the "intended beneficiaries of the federal medicaid statutes"; (3) the reimbursement rates set by CDSS are not arbitrary and capricious; and (4) CDSS made the "findings" and "assurances" required by federal law.
 
 
 8
 First, we hold that, pursuant to 42 U.S.C. Sec. 1396 et seq., the Hospitals have enforceable rights under 42 U.S.C. Sec. 1983; second, we hold that the Hospitals have standing to challenge the reimbursement rates under the Colorado Medicaid Plan; third, we hold that the district court improperly limited its review of the agency decision by determining only whether the Colorado reimbursement plan was arbitrary and capricious; fourth, the Colorado Medicaid payment rates were not in accordance with the procedures required by the federal Medicaid statute and regulations; fifth, the Medicaid reimbursement rates as established are violative of federal law; and sixth, the Medicaid payment rates as established are arbitrary and capricious.
 
 
 9
 Therefore, we REVERSE the district court. We declare the reimbursement rates to be in violation of federal law and prohibit their usage.
 
 I.
 FACTS
 
 10
 Effective July 1, 1988, the Colorado Medicaid Agency (CDSS) implemented a new provider reimbursement plan. 10 C.C.R. 2505-10, Sec. 8.356 (1988). The new plan employs diagnostically related groupings (DRG's) to pay providers prospectively determined rates based on the Medicaid patient's discharge diagnosis. The system classifies ailments or hospitalizations according to the discharge diagnoses and assigns to them a relative weight, which reflects relative resource consumption. When a provider has treated a Medicaid patient, the relative weight is multiplied by a base rate. A different base rate was determined for three peer groups of hospitals: (a) urban hospitals, (b) rural hospitals, and (c) rural referral centers. Hospitals within each group are presumed to have similar costs.
 
 
 11
 To compute base rates, the new Colorado Medicaid plan employs the following steps: Reimbursable Medicare costs are determined by cost standards in 42 U.S.C. Sec. 1395x(v)(1)(A) (1983) and 42 C.F.R. Sec. 413.1 et seq. (1987). Medicare reasonable costs do not encompass actual costs, but rather provide standards for reasonable allowable costs for provider reimbursement, i.e., only allowable costs which are reasonable in amount are reimbursable. To calculate the Medicaid base rate, an average Medicare reimbursable cost per discharge for each peer group is calculated. Then, the average Medicare cost per discharge is multiplied by .88 to determine the Medicaid average.[3] Thus, the calculation presumes that Medicaid patients, in general, incur only 88% of the medical costs of Medicare patients with the same ailment. Finally, CDSS multiplies the .88 reduced payment by .54, i.e., it reduces provider reimbursement by 46%.[4] The .54 is known as the budget adjustment factor (BAF), and is based solely on the sums historically and currently appropriated by the Colorado legislature for provider reimbursement for inpatient hospital services. The BAF resulting in a 46% decrease in provider reimbursement rates "has no relation to the actual costs of hospital services."
 
 
 12
 Because the BAF reduces provider reimbursement by 46%, the district court properly found that "no Colorado hospital recovers its actual costs." In addition, it properly found that "[s]ome of these Colorado hospitals are efficiently and economically operated."
 
 II.
 PRELIMINARY ISSUES
 
 13
 Before we reach the merits of the case, we must address three preliminary issues: (1) whether this suit is barred by the Eleventh Amendment;[5] (2) whether 42 U.S.C. Sec. 1396 et seq. creates enforceable rights under 42 U.S.C. Sec. 1983; and, (3) appellants' standing to challenge Colorado's Medicaid plan. We address these issues at the start since any one of them could dispose of the case in toto.
 
 A. Eleventh Amendment
 
 14
 In addition to Irene M. Ibarra, Executive Director of the State of Colorado, Department of Social Services, the hospitals have named the State of Colorado, Department of Social Services, as defendant. As previously noted, we raise the Eleventh Amendment issue sua sponte.
 
 
 15
 In this case, we must decide whether the State of Colorado may be subject to suit in federal court for alleged violations of the Medicaid Act. The State presents no arguments in support of its Eleventh Amendment defense, presumably resting on its bald assertion of the defense in the Pre-Trial Order. The district court was completely silent on the issue. However, we must address it since the Eleventh Amendment may be a jurisdictional bar to this court with respect to the State of Colorado as named defendant.
 
 The Eleventh Amendment provides:
 
 16
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 17
 Even though the clear language does not so provide, the Eleventh Amendment has been interpreted to bar a suit by a citizen against the citizen's own State in Federal Court. Hans v. State of Louisiana, 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890). In essence, the fundamental principle of sovereign immunity embodied in the Eleventh Amendment limits the grant of federal jurisdiction in Article III. Welch v. Texas Dept. of Highways and Pub. Transp., 483 U.S. 468, 472, 107 S.Ct. 2941, 2945, 97 L.Ed.2d 389 (1987), citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984).
 
 
 18
 The sovereign immunity afforded by the Eleventh Amendment is not absolute. In Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883), the Supreme Court held that if a State waives immunity and consents to suit in federal court, the Eleventh Amendment is not a bar. However, a State may waive immunity "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). Furthermore, "constructive consent" is not sufficient to overcome sovereign immunity. Edelman, 415 U.S. at 673, 94 S.Ct. at 1360. In addition, the Supreme Court has held that Congress may abrogate Eleventh Amendment sovereign immunity without the State's consent. Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). However, "Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 243, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). A fortiori, the Supreme Court will not infer Congressional abrogation of the Eleventh Amendment. Pennhurst, 465 U.S. at 99, 104 S.Ct. at 907.
 
 
 19
 In this case, the State of Colorado raised the Eleventh Amendment defense at the district court level. Despite the fact that its reply brief is silent on the issue, we cannot say that this is an effective waiver to satisfy the standard in Edelman. The State has not "expressly stated" by its silence that it has waived Eleventh Amendment immunity. Neither can we say that participation in this suit is an effective waiver. In Ford Motor Co. v. Department of Treasury of State of Ind., 323 U.S. 459, 466-67, 65 S.Ct. 347, 351-52, 89 L.Ed. 389 (1945), the State of Indiana, by its Attorney General, appeared in the federal district court and the circuit court of appeals and defended the suit on the merits. The Eleventh Amendment issue was addressed for the first time by the Supreme Court and held to be a bar. Id. at 468, 65 S.Ct. at 352. Thus, we hold that the State of Colorado's participation in this suit is not an effective waiver of its sovereign immunity.[6]
 
 
 20
 Next we consider whether Congress has abrogated the States' sovereign immunity by "unmistakable language" in the Medicaid Act to satisfy the standard in Atascadero. We find no such "unmistakable language" in the Act.
 
 
 21
 Therefore, we hold that the Eleventh Amendment is a bar to the suit against the State of Colorado, Department of Social Services, and, hereby, dismiss the State as named defendant. However, because the district court properly had jurisdiction over Irene M. Ibarra, as Executive Director,[7] the case is properly before us, and we will proceed to the merits.
 
 
 22
 B. 42 U.S.C. Sec. 1396 and Federally Enforceable Rights
 
 
 23
 Appellee maintains that Colorado hospitals have no statutory right to any Medicaid rate since 42 U.S.C. Sec. 1396a(a)(13)(A) is not the kind of statute that creates enforceable rights under 42 U.S.C. Sec. 1983. While readily admitting that in Colorado Health Care this circuit held that 42 U.S.C. Sec. 1396 creates enforceable rights under 42 U.S.C. Sec. 1983, appellee asks us to revisit the issue in light of the Supreme Court analysis in Middlesex Cty. Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), and Pennhurst State School and Hosp. v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).
 
 
 24
 In Virginia Hosp. Ass'n v. Baliles, 868 F.2d 653, 656-58 (4th Cir.1989), the Fourth Circuit, en banc, has viewed precisely this issue and applied precisely the analysis proposed by appellee. We are in complete accord with the Fourth Circuit's reasoning and determination that 42 U.S.C. Sec. 1396a(a)(13)(A) implies a private right of action under Sec. 1983. Id. at 656-60. Therefore, we reaffirm our previous holding that Sec. 1396a(a)(13)(A) creates enforceable rights to health care providers under 42 U.S.C. Sec. 1983, and adopt the reasoning of the Fourth Circuit as set forth in Virginia Hosp. Ass'n.
 
 C. Standing
 
 25
 It is axiomatic that only a party with a legally cognizable interest in a case or controversy has standing to obtain judicial resolution in federal court. To some extent "standing" is derived from the "case or controversy" requirement of Article III, Sec. 2. Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). If a party does not have standing, i.e., does not have a legally cognizable interest in the outcome of the case, no live controversy exists--any issuing federal opinion would be purely advisory, and, as such, prohibited by Article III, Section 2 of the United States Constitution.
 
 
 26
 Appellee contends that the hospitals, as Medicaid providers, do not have standing to challenge Colorado's Medicaid plan. She asserts that hospitals are not the intended beneficiaries of 42 U.S.C. Sec. 1396, i.e., only Medicaid patients have standing to challenge Colorado's Medicaid plan. This issue was squarely presented in Colorado Health Care Ass'n v. Colorado Dept. of Social Servs., 842 F.2d 1158, 1164, n. 5 (10th Cir.1988). Based on the Medicaid patients' and Medicaid providers' "parallel interests with respect to Medicaid funding and reimbursement," this circuit held that Medicaid providers had standing to challenge the state Medicaid plan. Id. (citing Edgewater Nursing Center v. Miller, 678 F.2d 716 (7th Cir.1982); Minnesota Ass'n of Health Care Facilities v. Minnesota Dept. of Pub. Welfare, 602 F.2d 150 (8th Cir.1979); California Hosp. Ass'n v. Obledo, 602 F.2d 1357 (9th Cir.1979); Massachusetts Gen. Hosp. v. Weiner, 569 F.2d 1156 (1st Cir.1978); National Union of Hosp. and Health Care Emp., RWDSU, AFL-CIO v. Carey, 557 F.2d 278 (2d Cir.1977)). With no arguments to support the request, appellee has asked us to revisit the issue, and so we have. We find no reason to overrule our original decision in Colorado Health Care.[8] Medicaid providers have standing to challenge a state Medicaid plan.
 
 III.
 FEDERAL MEDICAID LAW
 
 27
 Title XIX of the Social Security Act, 42 U.S.C. Sec. 1396 (1983), the Medicaid law, authorizes federal grants to States for medical assistance to low-income persons who are aged, blind, disabled, or members of families with dependent children. The program is financed by both the federal and state governments. State participation in the federal Medicaid program is purely voluntary; however, once a State chooses to participate, it must comply with the federal Medicaid laws and regulations. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980); Colorado Health Care Ass'n v. Colorado Dept. of Social Servs., 842 F.2d 1158, 1164 (10th Cir.1988).
 
 
 28
 Under the Medicaid law, each State is required to submit its Medicaid plan to the federal government, specifically the Health Care Financing Administration (HCFA). 42 U.S.C.A. Sec. 1396.[9] The State plan must satisfy the requirements of 42 U.S.C. Sec. 1396a(a)(13)(A) and the relevant federal regulations with respect to the setting of Medicaid payment rates. 42 C.F.R. Sec. 447.200 (1987). Change in payment rates under the State plan requires the State Medicaid Agency to submit the plan amendment to HCFA for approval. 45 C.F.R. Sec. 205.5 (1988). HCFA's review of the proposed State Plan is cursory at best. In essence, its review is limited to whether the "documentation submitted by the State Medicaid Agency complies with procedural requirements."
 
 
 29
 Under 42 U.S.C. Sec. 1396a(a)(13)(A), a state plan must, inter alia, provide for hospital services through the use of rates that the state "finds," and makes "assurances" satisfactory to HCFA:
 
 
 30
 [A]re reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to inpatient hospital services of adequate quality.
 
 
 31
 Id. In addition, the state plan must "take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs." Id.
 
 
 32
 The State need not submit the "findings" required by Sec. 1396a(a)(13)(A); it need only submit "assurances" that based on its "findings" all requirements of Sec. 1396a(a)(13)(A) have been met. Therefore, HCFA approval is based on state "assurances" of the state's "findings" that the state Medicaid plan is in compliance with federal Medicaid laws and regulations.
 
 
 33
 Aside from the requirements of Sec. 1396a(a)(13)(A), HCFA has implemented regulations which require state Medicaid agencies to establish payment rates consistent with, inter alia, the federal efficiency and economy requirement. 42 C.F.R. Secs. 447.250 et seq. (1987). These regulations also require that the state Medicaid agencies make "findings" and submit "assurances" to HCFA that the State plan conforms with Federal laws and regulations. 42 C.F.R. Sec. 447.250(a) (1987). Whenever the State Medicaid Agency makes a change in its payment methods and standards, it must make "findings" and submit "assurances" to HCFA for approval. 42 C.F.R. Sec. 447.253(a), (b) and (c) (1987). In the event of a change in payment rates, but not less than annually, the state agency must, inter alia, make the following findings:
 
 
 34
 (1) Payment Rates. The state agency's payment rates are "reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated providers to provide services in conformity with applicable State and Federal laws, regulations, and quality and safety standards." (42 C.F.R. Sec. 447.253(b)(1).)
 
 
 35
 (2) The payment rates must "take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs." (42 C.F.R. Sec. 447.253(ii)(A).)
 
 
 36
 (3) "The payment rates are adequate to assure that recipients have reasonable access, taking into account geographic location and reasonable travel time, to inpatient hospital services of adequate quality." (42 C.F.R. Sec. 447.253(ii)(C).)
 
 IV.
 
 37
 Federal Court Review of State Medicaid Plan
 
 
 38
 The Hospitals contend that the district court, misreading this court's decision in Colorado Health Care Ass'n v. Colorado Dept. of Social Servs., 842 F.2d 1158, 1164 (10th Cir.1988), improperly limited its review of the Colorado Medicaid plan by determining only "whether the findings of the State Medicaid Agency were arbitrary and capricious." We agree.
 
 
 39
 In passing on the validity of a state Medicaid plan under federal law, the court must determine whether the plan is procedurally and substantively in compliance with the requirements of the Federal Medicaid Act and its implementing regulations, and not limit its analysis to whether the nonadjudicatory agency findings are arbitrary and capricious. In Colorado Health Care, presented with a challenge to the validity of the change in the Colorado Medicaid payment rates, this circuit held that "[i]f the appellees have met the specific requirements of federal and state law, then we must defer to the agency's exercise of discretion unless the DSS acted arbitrarily or capriciously." Id. at 1165 (emphasis added) (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); Mississippi Hosp. Ass'n v. Heckler, 701 F.2d 511, 516 (5th Cir.1983); Mary Washington Hosp. v. Fisher, 635 F.Supp. 891, 897 (E.D.Va.1985)).[10] Quoting from Colorado Health Care, "Our first inquiry is whether the payment to the appellants ... resulted in noncompliance with the federal statute and regulations." Id. (emphasis added). This is an issue of law, subject to de novo review in federal court. The state agency's determination of procedural and substantive compliance with federal law is not entitled to the deference afforded a federal agency. Turner v. Perales, 869 F.2d 140, 141-42 (2d Cir.1989) (distinguishing Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984), in which the Supreme Court held that the federal agency set up to implement the federal law was entitled to deference so long as its interpretation was not arbitrary or capricious or manifestly contrary to law.) Indeed, the district court improperly limited its review as to whether the Colorado Medicaid Agency's findings and assurances were arbitrary and capricious to determine whether the state plan violated federal law.
 
 V.
 
 40
 COLORADO MEDICAID PLAN'S COMPLIANCE WITH PROCEDURAL
 
 REQUIREMENTS OF FEDERAL LAW AND REGULATIONS
 
 41
 To assure state compliance, the Federal Medicaid Act and implementing regulations require two separate procedures to be performed annually or any time a new state Medicaid plan is instituted: First, the State Medicaid Agency must engage in a "finding" process that all federal requirements have been met to substantiate its assurances, including the assurances that its payment rates satisfy the "efficiency and economy" requirement. Second, the State Medicaid Agency must supply HCFA with "assurances" that all federal requirements have been met, including the "efficiency and economy" requirement. 42 U.S.C. Sec. 1396a(a)(13)(A); 42 C.F.R. Sec. 447.205; 42 C.F.R. Sec. 447.250(a); 42 C.F.R. Sec. 447.253(a) and (b).
 
 
 42
 The plain language of federal Medicaid law mandates the State Medicaid Agency, at a minimum, to make "findings" which identify and determine (1) efficiently and economically operated hospitals; (2) the costs that must be incurred by such hospitals; and, (3) payment rates which are reasonable and adequate to meet the reasonable costs of the state's efficiently and economically operated hospitals. Appellee argues that federal law does not mandate these findings. We disagree with appellee's construction of federal law. The courts are the final authorities on issues of statutory construction and "must reject administrative constructions of the statute ... that are inconsistent with the statutory mandate." Federal Election Comm'n v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). We reject appellee's construction of the requirements of the federal Medicaid Act and its implementing regulations and hold that the federal Medicaid Act mandates the above enumerated findings.
 
 
 43
 Appellee's evidence at trial is flagrantly devoid of any effort to make the federally required findings. David West, the Director of the Division of Programs for the Colorado Medicare Program, readily admitted the State did not determine which hospitals are efficiently and economically run, and made no efforts to do so. In addition, he readily admitted the State did not determine the costs that must be incurred by the efficiently and economically operated hospitals. However, on appeal, appellee illogically insists that the State found and assured HCFA that its hospital rates are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in compliance with 42 U.S.C. Sec. 1396a(a)(13)(A) and 42 C.F.R. Sec. 447.253(a) and (b). Furthermore, appellee argues that since the federal government does not prescribe the steps to be taken in making the required findings, the State can simply comply with the federal requirements by assuring HCFA that it found its new plan to be in compliance with federal law.
 
 
 44
 The evidence at trial was that the bases for the State Medicaid Agency's so-called findings were the consistency between the current expenditure for Medicaid provider reimbursement and the amount of money historically appropriated by the Colorado legislature, and HCFA's acceptance of the previous Colorado Medicaid Plan submitted prior to 1980. We hold that neither bases or the combination of the two identify and determine: (1) the efficiently and economically operated hospitals; (2) the costs that must be incurred by such hospitals; and, (3) the payment rates which are reasonable and adequate to meet the reasonable costs that must be incurred by the efficiently and economically operated hospitals. The State's reliance on the HCFA's acceptance of a ten year old Medicaid plan is misplaced. The federal requirement is that the findings discussed supra be done annually or in the event of the implementation of a new plan. 42 U.S.C. Sec. 1396a(a)(13)(A) and 42 C.F.R. 447.253(b) et seq. Furthermore, nowhere in the federal Medicaid Act or the implementing regulations does it even imply that a state may rely solely on a previously accepted state Medicaid plan or the fact that the monetary appropriations under the old plan are the same as under the new plan. In fact, reliance on HCFA's approval of a previous plan is completely undercut by the requirement that the state make annual findings or even more frequently in the event of implementation of a new plan.
 
 
 45
 While it is true that a state is free to create its own method for arriving at the required findings, this does not absolve the state from making the required findings. Appellee's argument confuses this. Mere recitation of the wording of the federal statute is not sufficient for procedural compliance. There is a presumption that a state will engage in a bona fide finding process before it makes assurances to HCFA that the required findings have been made. To rule otherwise would completely eviscerate the federal requirements so long as the magic words are submitted to HCFA.
 
 
 46
 Based on our analysis of the governing federal law and the evidence at trial, we hold that appellee did not comply with the procedural requirements of 42 U.S.C. Sec. 1396a(a)(13)(A). As such, we hold the Colorado Medicaid Plan, effective July 1, 1988, to be violative of the procedural requirements of the controlling federal law.
 
 VI.
 
 47
 PAYMENT RATES UNDER NEW DRG PLAN VIOLATE THE "EFFICIENCY AND
 
 ECONOMY REQUIREMENT" OF FEDERAL LAW
 
 48
 As discussed earlier in this opinion, under Colorado's new DRG plan, payment rates to Medicaid providers are calculated by the application of a .88 reduction factor to average Medicare costs[11] given the same DRG, as determined by cost standards in 42 U.S.C. Sec. 1395x(v)(1)(A) (1983) and 42 C.F.R. Sec. 413.1 et seq. (1987). Then the budget adjustment factor (BAF), .54, is multiplied by the already reduced payment rate, thus cutting provider reimbursement 46% across the board.
 
 
 49
 Appellants do not challenge the DRG system of reimbursement or the application of the .88 reduction factor. They challenge the actual payment rates produced under the new DRG system because the base rates used to calculate DRG payments have been drastically reduced by the application of the BAF, a factor based solely on budget constraints. More importantly, they maintain that the application of the BAF is violative of 42 U.S.C. Sec. 1396a(a)(13)(A) and its implementing regulations since under the new plan, no Colorado hospital, no matter how efficiently and economically operated, will be reasonably and adequately compensated to meet the costs which must be incurred.
 
 
 50
 Based on uncontradicted evidence at trial, the district court found that no Colorado hospital will receive actual reimbursement for its costs as a result of the application of the BAF to the base rates. In addition, the district court found that some Colorado hospitals are efficiently and economically operated. Appellants contend that these two findings compel the conclusion that the Colorado Medicaid Plan violates the substantive requirements of the federal Medicaid Act. We hesitate to take the logical leap which appellants urge since federal Medicaid law does not require actual reimbursement. However, after review of the evidence at trial and controlling federal law, we agree that the Colorado Medicaid Plan violates the substantive provisions of Federal Medicaid law, but for the reasons set out below.
 
 
 51
 Kathleen Means, appellants' expert witness, testified at trial as an independent consultant in health care financing. She was qualified as an expert based on sixteen years of employment with the federal Medicare program and two years at Blue Cross/Blue Shield as National Director of Provider Payment System. She previously testified in two federal trials on behalf of HCFA regarding the same statutes and regulations in question here. She spent two years as a member of the federal task force that designed the Medicare DRG system. She co-authored the federal Medicaid regulations pertaining to Medicaid payment rates for inpatient hospital services. Her specific responsibility at HCFA was to review state Medicaid agencies' plans for reimbursing hospital services.
 
 
 52
 At trial, Ms. Means testified that under the new Colorado Medicaid Plan, no Colorado hospital, no matter how efficiently and economically operated, would be adequately and reasonably reimbursed for inpatient hospital services. The basis for her opinion was the requirements of federal Medicaid law and her familiarity with the methodologies used by other states in computing reimbursement rates using peer groupings as used by the Colorado plan, and her familiarity with the Colorado Medicaid Plan in question. She testified that for each peer group, hospitals are usually ranked from lowest to highest cost. Then the state chooses a certain percentile of the peer group and each hospital at or below the chosen percentile will have its costs met. Those hospitals at or below the percentile cut-off are designated the efficiently and economically operated hospitals. In other words, if a state chooses the sixtieth percentile, sixty percent of the hospitals will be reimbursed for the expenses they have incurred. If a hospital's expenses are above the sixtieth percentile, they will only be reimbursed for the costs incurred by a hospital at the sixtieth percentile. If a hospital is below the sixtieth percentile, that hospital may even be reimbursed above its actual costs. So, the hospital at the sixtieth percentile more or less sets the payment rate for that peer group. An alternate method used to set reimbursement rates is the average cost per discharge diagnosis of all the hospitals in the peer group. In effect, this is the system which Colorado uses prior to the application of the budget adjustment factor, .54, resulting in reimbursement of only 54% of the average cost. Due to the effect of this BAF, provider reimbursement has been brought down to the zero percentile for each peer group. Therefore, no Colorado hospital, no matter how efficiently and economically operated, is reasonably and adequately reimbursed for costs which must be incurred in violation of 42 U.S.C. Sec. 1396a(a)(13)(A). In comparing the zero percentile of reimbursement with percentiles of other states, Ms. Means testified that the lowest percentile she had ever seen was the fiftieth percentile. Furthermore, she testified that in one third of the states, the states pay the peer group averages; in the other third, states pay statewide averages; and in the final third, states pay facilities specific DRG rates. Ms. Means' testimony went unrebutted at trial.
 
 
 53
 In addition to Ms. Means, Mr. Hart, Vice-President for Fiscal Services of the Colorado Hospital Association,[12] testified that no hospital in Colorado would be reimbursed its reasonable costs under the new system. Mr. Hart was a member of the DRG Advisory Task Force which was formulated to provide recommendations to the Colorado Department of Social Services, the state agency responsible for Colorado's Medicaid program.
 
 
 54
 David West, the Director of the Division of Programs for the Colorado Medicaid Program, admitted at trial that he had no data that shows that the actual payment rates being made to Colorado hospitals under the new DRG system will reimburse any Medicaid providers reasonable costs. However, he testified that the proper findings and assurances were made and the new state plan complied with federal law. His assurances at trial and to HCFA rested solely on the historical trends concept, i.e., since the old system was adequate, and the same amount of dollars are paid out under the new system, the new system must be adequate. The problem with his reasoning is twofold: first, the state Medicaid Agency must make the required findings annually or in the event of the implementation of a new plan; and, second, the findings upon which the new plan is based were made prior to the enactment of the Omnibus Budget Reconciliation Act of 1981, which mandated a state payment rate to be reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated providers. See, e.g., Colorado Health Care Ass'n v. Colorado Dept. of Social Servs., 842 F.2d 1158, 1165-66; Illinois Hospital Ass'n v. Illinois Dept. of Public Aid, 576 F.Supp. 360, 362 (N.D.Ill.1983).
 
 
 55
 Aside from the expert testimony at trial, we independently conclude that based on the application of the BAF, resulting in a 46% reduction of the Medicaid reasonable cost as calculated by the 88% reduction of the Medicare reasonable cost, no Colorado hospital is reasonably or adequately compensated. The reasonable Medicaid cost would be .88 X reasonable Medicare cost, given the same DRG. Under Colorado's new plan, all hospitals are reimbursed only about half their reasonable costs. In addition, we agree with the district court's finding that some Colorado hospitals are efficiently and economically operated; therefore, pursuant to Sec. 1396a(a)(13)(A), those hospitals must be compensated for their reasonable costs for the plan to comply with federal Medicaid law.
 
 
 56
 After a careful review of the record, we find that appellee offered no credible evidence to support the "finding" that the new Medicaid reimbursement rates comply with federal law. Now on appeal, appellee baldly "assures" us that the State Medicaid plan complies with federal law. Perhaps "assurances" are adequate for HCFA, but at trial a party must offer evidence, which supports its position. Since we find no evidence admitted at trial to support appellee's "assurances" on appeal, and find overwhelming evidence to the contrary, we hold that the Colorado Medicaid Plan, effective July 1, 1988, is violative of the substantive provisions of federal Medicaid law. Specifically, we hold that the application of the BAF resulting in an across the board 46% reduction such that no Colorado hospital, no matter how efficiently and economically operated, is reasonably and adequately reimbursed violates 42 U.S.C. Sec. 1396a(a)(13)(A) and its implementing regulations. Therefore, we prohibit the use of this BAF. However, in so doing, we do not prohibit the use of any BAF in the future. This court is mindful of state budgetary constraints and would approve of the application of a BAF so long as the resulting reimbursement rates complied with controlling federal law.
 
 VII.
 
 57
 FINDINGS AND ASSURANCES--ARBITRARY AND CAPRICIOUS
 
 
 58
 Appellants allege that the payment rates produced under the new DRG system are arbitrary and capricious as a result of the application of the budget adjustment factor. The district court found that:
 
 
 59
 The fact that the State Medicaid Agency adjusted repayment rates according to State budgetary constraints does not invalidate the agency's findings. In Colorado Health, the Tenth Circuit Court of Appeals construed the same provision of law at issue here, 42 U.S.C. Sec. 1396a(a)(13)(A). Id. at 1165. The court held that states can consider budgetary constraints as a factor in amending Medicaid payment methods. Id. at 1168. Similarly, the State Medicaid Agency is entitled to rely on budgetary considerations in setting repayment rates.
 
 
 60
 (Emphasis added.) We agree with the district court's conclusions, but nevertheless hold that the State Medicaid Agency's findings and assurances that the new Colorado Medicaid plan complies with federal law were arbitrary and capricious.
 
 
 61
 In reviewing nonadjudicatory agency actions, the court must determine whether the agency action was based upon "a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). "The standard of review is highly deferential, presuming the agency action to be valid ... if a reasonable basis exists for its decision." California Hosp. Ass'n v. Schweiker, 559 F.Supp. 110, 116 (D.C.Cal.1982) (emphasis added). However, the court is still obliged "to engage in a substantial inquiry." Overton Park, 401 U.S. at 415, 91 S.Ct. at 823. In other words, the presumption of validity "is not to shield [the agency's] action from a thorough, probing, in-depth review." Id. In essence, our task is to determine if there was a reasonable factual basis to support the State Medical Agency's findings and assurances that, under Colorado's new Medicaid plan, the efficiently and economically operated hospitals are reasonably and adequately reimbursed for the costs which must be incurred as mandated by 42 U.S.C. Sec. 1396a(a)(13)(A).
 
 
 62
 While Colorado Health does declare that a State Medicaid Agency may consider budgetary constraints, budgetary constraints cannot excuse noncompliance with federal Medicaid law. Wisconsin Hosp. Ass'n v. Reivitz, 733 F.2d 1226, 1236 (7th Cir.1984); Mississippi Hosp. Ass'n v. Heckler, 701 F.2d 511, 518, 521; Illinois Hosp. Ass'n v. Illinois Dept. of Public Aid, 576 F.Supp. 360, 368 (1983) (citing Alabama Nursing Home Ass'n v. Harris, 617 F.2d 388, 396 (5th Cir.1980)). While Colorado Health allows the state to consider budgetary factors as a factor in amending Medicaid payments, consideration of budgetary factors alone does not translate to automatic compliance with the federally mandated findings that efficiently and economically operated hospitals are reasonably and adequately compensated for the costs which must be incurred. 42 U.S.C. Sec. 1396a(a)(13)(A); 42 C.F.R. 447.200(a); 42 C.F.R. Sec. 447.253(a) and (b).[13] A "state must articulate 'a rational connection between the facts found and the choice made.' " Colorado Health, 842 F.2d at 1167, citing Baltimore Gas & Elect. v. Natural Resources Defense Council, 462 U.S. 87, 105, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437 (1983).
 
 
 63
 In Colorado Health, we upheld the elimination of the incentive or bonus-type payments to providers because the State Medicaid Agency made the proper findings that the amended plan was in compliance with controlling federal law, i.e., there was a reasonable basis for the Agency's findings. Id. at 1169. The Colorado Medicaid Agency had "considered some forty (40) different options for cutting the program costs." Id. at 1167. In addition, we found that the Agency considered "the relevant factors and data so that a rational relationship exist[ed] between" the facts considered and the resulting findings. Id. We also specifically found that the factors relevant to the "efficiency and economy standard" were considered before the Agency's findings of compliance with federal Medicaid law. Id.
 
 
 64
 The record in this case is blatantly devoid of any effort by the Colorado Medicaid Agency to make the federally mandated findings. Based solely on budgetary constraints, CDSS assured HCFA that the proper findings of federal compliance were made. We hold that there was no reasonable basis for its "findings" or its assurances to HCFA. While budgetary constraints may be a factor to be considered by a state when amending a current plan, implementing a new plan, or making the annually mandated findings, budgetary constraints alone can never be sufficient. Illinois Hosp. Ass'n, 576 F.Supp. at 368. "If a state could evade the requirements of the [Medicaid] Act simply by failing to appropriate sufficient funds to meet them, it could rewrite the congressionally imposed standards at will." Alabama Nursing Home Ass'n v. Califano, 433 F.Supp. 1325, 1330 (M.D.Ala.1977), rev'd and vacated in part on other grounds, sub nom., 617 F.2d 388 (5th Cir.1980).
 
 
 65
 Appellee argues that budgetary constraints were not the sole factor considered when making the required findings and assurances; in fact, appellee relied on the prior approval of a ten year old plan. This was not a reasonable basis for the findings. Federal law mandates annual findings.
 
 
 66
 Therefore, we hold Colorado Medicaid Agency's factual foundation and subsequent findings and assurances are not reasonably related. The evidence before us reveals arbitrary and capricious actions. Accordingly, we REVERSE the district court on this issue.
 
 CONCLUSION
 
 67
 In sum, we declare the new Colorado Medicaid Plan, effective July 1, 1988, violative of the procedural and substantive requirements of the Federal Medicaid Act and its implementing regulations. In addition, we REVERSE the district court and hold that the findings made and assurances submitted to HCFA lacked any reasonable basis, and, as such, were arbitrary and capricious. Specifically, we hold that the application of the Budget Adjustment Factor, .54, resulting in an across the board 46% reduction in provider reimbursement, violates controlling federal Medicaid law under these facts, and prohibit its usage as of the date of this opinion. However, in so doing, we do not foreclose future application of a BAF so long as the resulting provider rates comply with federal law.
 
 
 68
 We remand to the district court to order defendant, Irene M. Ibarra, Executive Director of the Colorado Department of Social Services, to comply with the procedural and substantive requirements of the federal Medicaid Act and its implementing regulations, and to engage in a bona fide finding process before submitting any new plan and/or assurances to HCFA.
 
 
 69
 REVERSED AND REMANDED.
 
 
 
 [1]
 Appellants may be confused on this issue because the Joint Pre-Trial Order stated that 28 U.S.C. Sec. 1361 was a jurisdictional basis
 
 
 [2]
 28 U.S.C.A. Sec. 1361 (1976) grants federal courts "jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Although this jurisdictional grant may apply to the federal Medicaid agencies--the Department of Health and Human Services (DHSS), and the Health Care Financing Administration (HCFA)--it does not apply to the state defendants
 
 
 [3]
 
 MEDICARE REASONABLE MEDICAID REASONABLE
 ALLOWABLE COST x .88 = ALLOWABLE COST
 
 
 FN4
 
 MEDICARE REASONABLE ACTUAL PROVIDER
 ALLOWABLE COST x .88 x .54 = REIMBURSEMENT
 
 
 [5]
 We raise the Eleventh Amendment issue sua sponte. Appellees raised the defense in the Pre-Trial Order, but did not address it in their brief
 
 
 [6]
 In Clallam Cty. v. Department of Transp. of the State of Wash., 849 F.2d 424, 426-27 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 790, 102 L.Ed.2d 782 (1989), the Ninth Circuit dismissed the State as a defendant over the State's willingness to proceed in federal court, because the statements used were not "unequivocally expressed" to satisfy the standard in Pennhurst, 465 U.S. at 99, 104 S.Ct. at 907. Clallam Cty. 849 F.2d at 427
 
 
 [7]
 Plaintiffs seek no monetary award, and so, under Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the suit is properly brought against Irene M. Ibarra
 
 
 [8]
 It should be noted that a panel decision can only be overruled by the decision of this court sitting en banc
 
 
 [9]
 HCFA is the agency within the federal Department of Health and Human Services designated by Congress to administer the Medicaid program at the federal government level
 
 
 [10]
 In addition, we cite West Virginia University Hospitals v. Casey, 701 F.Supp. 496, 512 (M.D.Pa.1988); Thomas v. Johnston, 557 F.Supp. 879, 901 (W.D.Tex.1983)
 
 
 [11]
 Medicare reimbursement does not cover all actual hospital costs. It compensates only allowable costs which are reasonable
 
 
 [12]
 Specifically, Mr. Hart was responsible for the financial issues dealing with hospital reimbursement issues for the Colorado Medicare program, Medicaid program. There are one hundred Colorado hospitals in the Colorado Hospital Association
 
 
 [13]
 Quoting from the Finance Committee Recommendations as to 42 U.S.C. Sec. 1396 et seq.: "The Committee continues to believe that States should have flexibility in developing methods of payment for their medicaid programs.... The flexibility given the States is not intended to encourage arbitrary reductions in payment that would adversely affect the quality of care." S.Rep. No. 139, 97th Cong., 1st Sess., reprinted in 1981 U.S.Code Cong. & Admin.News 396, 744