**MICHIGAN HOSPITAL ASSOCIATION, a Michigan nonprofit corporation, et al., Plaintiffs,**

v.

**C. Patrick BABCOCK, Director of The Department of Social Services, Defendant.**

**No. 5:89–CV–70.**

United States District Court, W.D. Michigan, S.D.

April 26, 1990.

David A. Ettinger, Frederick M. Baker, Jr. and Chris Rossman, Lansing, Mich., for plaintiffs.

Robert S. Welliver and Christopher D. Dobyns, Lansing, Mich., for defendant.

## OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

Now before the Court is plaintiffs' motion for summary judgment or, in the alternative, for preliminary injunction. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging that defendant has deprived them of their rights secured by a law of the United States. In particular, plaintiffs allege that defendant has deprived them of their rights under the hospital reimbursement section of the Medicaid Act, being 42 U.S.C. § 1396a(a)(13)(A) (Section 1396a), by failing to comply with the federal statute. The Court agrees.

The Medicaid Act is a cooperative federal-state program designed to provide medical assistance to certain low-income persons through reimbursement to health care providers for services rendered to these persons. Participation by the State in the Medicaid program is entirely voluntary. However, once a State makes the decision to participate in the program, it must comply with the federal Medicaid laws and regulations. *Amisub (PSL) v. State of Colorado, Dept. of Social Services*, 879 F.2d 789, 794 (10th Cir.1989); *Mississippi Hospital Ass'n v. Heckler*, 701 F.2d 511, 515 (5th Cir.1983).

As part of a State's participation in the Medicaid program, it must submit its plan to the designated unit of the Department of Health and Human Services for approval. At present, the Health Care Financing Administration (HCFA) is charged with the responsibility of reviewing and approving state Medicaid plans and plan amendments. *Amisub, supra; California Hospital Ass'n v. Schweiker*, 559 F.Supp. 110, 112 (C.D.Calif.1982). The State plan must satisfy the requirement of section 1396a and any regulations promulgated pursuant to that statute.

Prior to the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. No. 97–35 Stat. 808–809, the Medicaid Act required States to reimburse hospitals for the reasonable costs of inpatient services. Reimbursement on the reasonable cost basis was a retrospective payment system. *West Virginia University Hospitals, Inc. v. Casey*, 885 F.2d 11, 15 (3rd Cir.1989); *Mary Washington Hospital, Inc. v. Fisher*, 635 F.Supp. 891 (E.D.Va.1985); *California Hosp. Ass'n, supra*. With OBRA, as codified in the revised section 1396a(a)(13)(A), Congress changed the reimbursement standard in order to contain escalating hospital costs. *West Virginia University Hospitals, supra*. The revised statute gives the State more flexibility in their attempts to promote hospital efficiency and reduces the federal oversight of the methodology used by the States for reimbursement. *West Virginia University Hosp., supra; Mary Washington Hosp., supra*.

Section 1396a, in pertinent part, states:
(a) a State plan for medical assistance must—

. . . .

(13) provide—
(A) for payment (except where the State agency is subject to an order under section 1396m of this title) of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State and which, in the case of hospitals, take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs and provide, in the case of hospital patients receiving services at an inappropriate level of care (under conditions similar to those described in section 1395x(v)(1)(G) of this title)) *which the State finds*, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality

and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to inpatient hospital services of adequate quality; and such State makes further assurances, satisfactory to the Secretary, for the filing of uniform cost reports by each hospital, skilled nursing facility, and intermediate care facility and periodic audits by the State of such reports;

(Emphasis added). The Secretary of the Department for Health and Human Services has promulgated regulations to guide the States in meeting the requirements of section 1396a. 42 C.F.R. § 447.250, *et seq.* 42 C.F.R. § 447.250(a) requires the State to make findings and submit assurances to the HCFA that the rates are "reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated facilities." 42 C.F.R. § 447.253(b) requires the State to make findings whenever it "makes a change in its methods and standards, but not less often than annually ..." 42 C.F.R. § 447.253(b)(1)(i) provides that the State must make findings that their rates "are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated providers ..."

In summary, the revised section 1396a and the regulations significantly reduce the federal agency's oversight of State Medicaid Plans. The HCFA's responsibility is to review the "assurances" which are expected to be based on the required findings made by the State agency. The findings must show that the proposed rates are (1) reasonable and adequate to (2) meet the costs which must be incurred by (3) economically and efficiently operated hospitals. Absent a specific request, the HCFA does not review the findings of the State agency.

In 1984, the State legislature commanded the State agency to prepare a prospective payment plan for inpatient hospital services based on diagnostic related group (DRG) methodology. 1984 P.A. 246 § 120a. In the MA–85–5 plan submitted by the State

to the HCFA, the State indicated that the inflation factor would be based on a market basket approach. In 1986 P.A. 266, the legislature directed the agency to refigure the rates based on 1985–86 costs (base year). The statute gave an inflation update effective April 1, 1987 for the rebased costs of 1.725%. As part of the recalibration of costs, the State agency instituted a Standard of Payment Factor which reduced each hospital's base year costs by approximately 9%. In plan amendment transmittal number 89–9 to the HCFA, the State indicated it would use a price update factor of .5%. In a letter dated May 12, 1989, the HCFA found the State's assurances inadequate. The agency stated:

The regulation at 42 CFR 447.253(b)(1)(i) requires that the State must provide an assurance and finding that the resulting rates are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in accordance with Federal and State quality and safety standards. In addition, the legislative history for this provision makes it clear that the State's rates must take into account economic conditions (i.e., inflation) that will occur during the period for which the rates have been established.

Although the State has provided an assurance that the rates are reasonable and adequate, we do not believe that the State's assurance is as yet satisfactory. Michigan is proposing a rate year inflation of .005 percent when in actuality the inflation costs that hospitals are experiencing might warrant a higher update factor. Therefore, we would request the State to provide additional information to support the assurance concerning the reasonableness and adequacy of its proposed rates.

Specifically, the State would be expected to demonstrate that its increase is sufficient to assure that efficiently and economically operated facilities will receive their costs, considering the impact of inflation estimated to occur during the rate year.

The State has not yet responded to the HCFA's request. Eileen Ellis, an employee in the State Agency, said that the State had not responded because it did not want to start the 90–day clock running. Apparently, once a State responds to an HCFA request, the HCFA has 90 days to either accept or reject the plan amendment. Defendant did not present any evidence that the State agency made any findings prior to submitting its assurances to the HCFA.

Plaintiffs' arguments, although broken down into many subparts, are that defendant did not make the findings required by the federal Medicaid Act and that the payments made to hospitals do not comply with the statutory mandate. Defendant argues that summary judgment is premature because the hospitals have not answered defendant's interrogatories which are designed to show whether the plaintiff hospitals are economically and efficiently operated and because defendant has not completed its revision of the 1989 plan amendment.

█ On a motion for summary judgment, the Court reviews the evidence in a light most favorable to the nonmoving party. The moving party has the burden of showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 275 (1986). The nonmoving party must present the Court with specific facts which demonstrate that there is a genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). Summary judgment is precluded if there is a dispute with regard to a fact "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

The Sixth Circuit recently reviewed the federal summary judgment standards in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989). In *Street*, the Court set forth ten principles for the "new era" of summary judgment practice as follows:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that

there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Id.* at 1479–80 (footnotes omitted.) These principles guide the Court's decision in this case.

█ In reviewing the State's Medicaid plans, the Court must first determine whether it was prepared procedurally and substantively in compliance with the federal Medicaid Act and regulations. If the Court finds that the plan is in procedural and substantive compliance with federal law, the Court will limit its review to whether the agency's actions were arbitrary and capricious. *Amisub,* 879 F.2d at 795; *Mississippi Hosp. Ass'n,* 701 F.2d at 516; *Mary Washington Hosp.,* 635 F.Supp. at 897.

Plaintiffs have provided the Court with evidence that there is no genuine issue of material fact in dispute with regard to defendant's compliance with federal law. In accordance with the principles set out by the Court in *Street,* defendant would argue that he has not had a sufficient opportunity for discovery. The Court disagrees and finds that the facts defendant wishes to discover—whether plaintiffs are efficiently and economically operated—are not material to the substantive issue in the case. The only facts which are material in this case is whether defendant has complied with federal law and if he has whether his actions are arbitrary and capricious. All the evidence necessary to show compliance is within the control of defendant.

█ Plaintiffs argue that defendant has failed to make the findings required by the federal Medicaid Act. The Tenth Circuit has concisely set forth the findings required by the federal statute. The Court, in *Amisub,* 879 F.2d at 796 stated:

The plain language of federal Medicaid law mandates the State Medicaid Agency, *at a minimum,* to make "findings" which identify and determine (1) effi-ciently and economically operated hospitals; (2) the costs that must be incurred by such hospitals; and (3) payment rates which are reasonable and adequate to meet the reasonable costs of the state's efficiently and economically operated hospitals.

(emphasis in original). These findings must be done on an annual basis. *Id.* at 797. The Third Circuit has also explicitly stated that a failure to make the requisite findings is a violation of the Medicaid Act. *West Virginia University Hosp.,* 885 F.2d at 30. The Court must determine whether defendant has presented sufficient evidence to justify a trial in this matter. The following review of the evidence in this case demonstrates that defendant has failed to call the Court's attention to any material fact in dispute and has failed to make any of the necessary findings.

The facts presented in this case show that only 14 of 182 Michigan hospitals receive reimbursement for their costs. If the IVA (indigent volume adjustment) payment is subtracted from the reimbursements, no Michigan hospital receives complete reimbursement. Even if the Court agrees with defendant that IVA payments are appropriately considered as part of the reimbursement, it would have to believe that defendant has made findings that only 7.7% of Michigan hospitals are efficiently and economically operated. The Court finds such an inference implausible for two reasons. It is hard to give credence to the idea that only 14 out of 182 hospitals and only hospitals with high indigent volumes are economically and efficiently operated.

Defendant states in his brief that the assurances presented to HCFA were based on written findings. But defendant did not submit any of these findings to the Court. Such evidence is not necessary because defendant is not required to make *written* findings. *Mary Washington Hosp.,* 635 F.Supp. at 897. However, defendant is required to demonstrate to the Court that the required findings were made. Unlike the Virginia Task force reviewed in *Mary Washington Hosp.,* defendant has not shown that even rudimentary findings

were undertaken. In fact, the evidence shows quite the opposite.

In his deposition, David Ferguson, an employee of the State agency, stated that the agency does not "make any distinction between economically and efficiently operated hospitals and other hospitals in looking at the cost." (Ferguson dep. p. 101). Ferguson said that, in helping to prepare the State plan, he did not make any determinations with regard to what costs must be incurred by efficiently and economically operated hospitals and whether any Michigan hospitals were efficiently and economically operated. Ferguson admitted that the assurances submitted to the HCFA were not based on any fully developed facts (Ferguson dep. pp 345–46).

Ms. Ellis, Ferguson's superior, in her deposition, stated that she had no opinion with regard to whether some efficiently and economically operated hospitals were being inadequately reimbursed. (Ellis dep., p 62). Ellis said that there had been "[a] beginning discussion of what criteria might be used" to define an efficiently and economically operated hospital. (Ellis dep., p 27).

Kevin L. Seitz, director of Medicaid for the Michigan Department of Social Services, stated that there was no attempt made to differentiate between efficient and inefficient hospitals. Seitz said that there had been no estimate as to how many Michigan hospitals are efficiently and economically operated. Defendant, the director of the Michigan Department of Social Services, stated that he was not aware of any test to determine whether a hospital was efficiently and economically operated.

The Court finds that defendant completely failed to meet the requirements of the federal Medicaid Act, § 1396a(a)(13)(A). Defendant's evidence shows a total absence of findings on any part of the federal statute. This is apparent from the evidence that defendant has no idea whether the State's payments are "reasonable and adequate" to meet the costs which must be incurred by efficiently and economically operated hospitals.

In addition, the State's witness, Eileen Ellis, stated that the recent update of .5% was based solely on budget considerations. Budget constraints can be considered in determining Medicaid rates but they cannot be the *sole* factor considered. *Amisub*, 879 F.2d at 800–801; *Wisconsin Hosp. Ass'n v. Reivitz*, 733 F.2d 1226, 1235 (7th Cir.1984).

In light of the clear failure of defendant to make *any* of the findings required by section 1396a(a)(13)(A), the Court grants plaintiffs' motion for summary judgment and finds that State plan amendment MA–87–10 and all subsequent plan amendments are invalid as violative of federal law. In view of the invalidation of the above plans, the prior method of reimbursement is reinstated pending replacement by a valid plan amendment. *Mason Gen. Hosp. v. Secretary of Dept. of H.H.S.*, 809 F.2d 1220, 1223 (6th Cir.1987). The Court will retain jurisdiction in this matter and require the defendant to supply the Court with a new plan amendment in conformity with federal law within 180 days from the date of this opinion.