## CONNECTICUT HOSPITAL ASSOC., et al.

v.

## William A. O'NEILL, et al.

Civ. No. 3–90–714 (WWE).

United States District Court, D. Connecticut.

Jan. 18, 1994.

Brian J. Casey, J. Michael Eisner, Mark Richard Kravitz, Keith M. Krom, Alan G. Schwartz, Wiggin & Dana, New Haven, CT, for plaintiffs.

Fredric J. Entin, American Hosp. Ass'n, Chicago, IL, for American Hosp. Ass'n.

Kenneth A. Graham, Atty. General's Office, Bridgeport, CT, Phyllis E. Hyman, Arnold I. Menchel, and Henry A. Salton, Atty. General's Office, Hartford, CT, for defendants.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiffs, the Connecticut Hospital Association and thirty-three of its member hospitals, brought this action against defendants, the Governor of Connecticut and the Commissioner of the Department of Income Maintenance (DIM),[1] challenging Connecticut's Medicaid rate-setting system for inpatient hospital reimbursements ("the system" or "the reimbursement system").

## I. INTRODUCTION

Plaintiffs have brought four counts against defendants, claiming that (1) Connecticut's system has precipitated Medicaid reimbursement in amounts substantially less than required by federal law, (2) defendants have failed to make annual findings establishing a nexus between its reimbursement rates and the costs of efficiently and economically operated facilities, (3) by failing to set sufficient rates of reimbursement, defendants violated and continue to violate the fourteenth amendment to the United States Constitution, and (4) defendants violated 42 U.S.C. § 1983.

In September, 1992, this court entered a pretrial order on deadlines, creating two phases of litigation. In the first phase, the parties were to complete all discovery necessary for cross-motions for summary judgment by July 31, 1993. If necessary, the parties would then proceed to phase two and resolve all remaining issues. Having completed phase one of the pretrial order, the parties have filed cross-motions for summary judgment.

Plaintiffs have moved for partial summary judgment on Count II and on defendants' affirmative defenses. For the reasons set forth below, plaintiffs' motion will be granted as to Count II and as to defendants' first affirmative defense. Defendants have cross-moved for summary judgment on all four counts of the complaint. For the reasons set forth below, the defendants' cross-motion for summary judgment will be denied, except that defendants may renew the motion for summary judgment on Counts I, III and IV *after* they have cured their procedural violation of the Boren Amendment.

## II. BACKGROUND

### A. *The Medicaid Program*

Medicaid is a federal and state program through which the federal government offers financial assistance to help fund health care for needy individuals. *Rye Psychiatric Hosp. Center, Inc. v. Surles,* 768 F.Supp. 82, 87 (S.D.N.Y.1991) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)). The Medicaid Program (the Act) was established pursuant to title XIX of the Social Security Act. 42 U.S.C. § 1396. While participation is optional, once a state elects to participate in the program, it must conform its medicaid reimbursement plan to the requirements of the Act and the regulations thereunder. *Pinnacle Nursing Home v. Axelrod,* 928 F.2d 1306, 1309 (2d Cir.1991).

A state must submit to the Secretary of the United States Department of Health and Human Services (HHS) a plan for medical assistance. 42 U.S.C. § 1396a(b).[2] The plan must contain a comprehensive written statement setting forth the nature of the state's Medicaid program and assuring HHS that the state will administer the plan in conformity with applicable federal law. 42 C.F.R. § 430.10. If HHS approves the plan, the state is entitled to reimbursement from the federal government. The reimbursement includes a percentage of the funds paid by the state to health care facilities that provide services to Medicaid recipients. 42 U.S.C. § 1396b(a). State and local governments must then bear the remainder of the costs under the state program. *Pinnacle,* 928 F.2d at 1309.

---

1. As of July, 1993, the Department of Income Maintenance was combined with several other agencies into the Department of Social Services. The court will refer to the Department of Income Maintenance as "DIM."

2. In fact, the Health Care Financing Administration is the body charged by HHS to review Medicaid plans. To avoid confusion, this ruling will refer to HHS as the reviewing authority. *See, e.g., Rye Psychiatric Hosp. Center, Inc. v. Surles,* 768 F.Supp. 82, 83 (S.D.N.Y.1991).

Initially, the Act required reimbursement of the "reasonable cost" of inpatient services. However, in 1980, Congress enacted the Boren Amendment and dramatically altered the reimbursement provisions of the Act. *Wilder*, 496 U.S. at 505–506, 110 S.Ct. at 2515–2516. The Boren Amendment repealed the "reasonable cost" methodology, instead requiring reimbursement at rates that "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A).

The rationale underlying the Boren Amendment is two-fold. The amendment was designed first to afford states greater flexibility in fashioning reimbursement rates and second to increase the economy and efficiency of all plans. The enhanced flexibility, however, was "not intended to encourage arbitrary reductions in payment that would adversely affect the quality of care." *Pinnacle*, 928 F.2d at 1309–10 (citing S.Rep. No. 139, 97th Cong. & Admin. News 396, 744).

### B. *Connecticut's Rate–Setting for Medicaid Reimbursement*

In 1982, Connecticut devised a two-tracked reimbursement system. DIM determines each hospital's reasonable inpatient costs attributable to Medicaid patients on the basis of (1) reports submitted by the hospitals and (2) *Medicare* reasonable cost reimbursement principles. DIM also determines inpatient costs based on hospital data from fiscal year 1982 and on reimbursement figures set forth in the Tax Equity and Fiscal Responsibility Act of 1983 (TEFRA). The TEFRA figure is updated annually. Ultimately, DIM reimburses hospitals at the lesser of the Medicare or the TEFRA rate. Conn. Agencies Regs. §§ 17–312–101, 102 & 104(a)(2).

### C. *Connecticut's Experience with Medicaid Reimbursement*

In the last decade, Connecticut hospitals have endured a rapidly growing gap between their actual costs of providing inpatient services to Medicaid recipients ("Medicaid costs") and the amount of state reimbursement for these costs. Since DIM promulgated the reimbursement system at issue, the difference between statewide Medicaid costs and reimbursement has risen from $531,767

in fiscal year 1983 to $37,151,002 in fiscal year 1989. Viewing this period cumulatively, Medicaid costs have exceeded reimbursement by more than $89 million. The state's own data reveals that this trend has not moderated in the last four years.

Connecticut's system has forced an increasing number of hospitals to bear large portions of their Medicaid costs. Initially, in fiscal year 1983, nearly half of Connecticut's general hospitals were receiving full reimbursement for their Medicaid costs. In fiscal year 1989, not one Connecticut general hospital was fully reimbursed for its Medicaid costs. Since 1989, the state may have fully reimbursed just one hospital for its Medicaid costs. Some evidence indicates that even that hospital may not have received full reimbursement.

## III. DISCUSSION

### A. *Summary Judgment Principles*

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

### B. *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs have moved for partial summary judgment. First, plaintiffs contend that defendants have not made any findings establishing a nexus between Connecticut's reim-

bursement rates and the costs of efficiently and economically operated facilities, so that summary judgment should enter on Count II. Second, plaintiffs claim that summary judgment is appropriate as to defendants' affirmative defenses.

### 1. *Adequacy of Findings*

■ The regulations under the Medicaid Act require states to engage in a "findings" process annually or whenever an agency alters its methods. Specifically, the Act and the regulations promulgated thereunder require a state to find that "[t]he Medicaid agency pays for inpatient hospital services and long-term care facility services that are reasonable and adequate to meet the costs that must be incurred by *efficiently and economically operated facilities.*" 42 C.F.R. § 447.253(b)(1)(i) (emphasis added); 42 U.S.C. § 1396a(a)(13)(A). The regulations also require the Medicaid agency to submit assurances to HHS that the state has met all federal requirements, "including the 'efficiency and economy' requirement." *AMISUB, Inc. v. Dept. of Social Services,* 879 F.2d 789, 796 (10th Cir.1989), *cert. denied,* 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).

The Second Circuit has held that a state *must* make findings to comply with federal law and has delineated the essential elements of the Act's findings requirement:

> '[t]he plain language of federal Medicaid law mandates the State Medicaid Agency, *at a minimum,* to make "findings" which identify and determine (1) efficiently and economically operated hospitals; (2) the costs that must be incurred by such hospitals; and, (3) payment rates which are reasonable and adequate to meet the reasonable costs of the state's efficiently and economically operated hospitals.' ... In other words, the state must make findings which establish a nexus between the costs of operating efficient and economic ... facilities and the proposed reimbursement rates under the state plan.

*Pinnacle,* 928 F.2d at 1314. (quoting *AMISUB,* 879 F.2d at 796).

In the present case, DIM failed to make sufficient findings. To the extent that any findings exist, DIM has fallen far short of its obligation under federal law. Not once in the last twelve years has DIM issued findings that establish a nexus between the costs of operating efficient, economic facilities and the reimbursement rates. This shortcoming is particularly surprising in light of undisputed data suggesting an inability of the state system to adequately reimburse Connecticut hospitals for their Medicaid costs.

For fiscal years 1983 through 1986, DIM failed to make any findings whatsoever. A cost analyst for DIM testified as follows: "I did review the files and could not locate findings [prior to fiscal year 1987]." Defendants have not offered any evidence indicating that findings were made covering this period. DIM's failure to make findings for fiscal years 1983 through 1986 violated federal law. *Pinnacle,* 928 F.2d at 1315; *Rye,* 768 F.Supp. at 87; *see also Illinois Health Care Ass'n v. Bradley,* 983 F.2d 1460, 1466–67 (7th Cir.1993) (findings requirement not met; no extant studies, old or new, on which to base findings).

In 1986, HHS suggested that DIM prepare and document findings demonstrating the appropriateness of the rate-setting procedures. DIM responded by issuing annual reports setting forth findings and assurances for fiscal years 1987 through 1991. DIM's findings did not comply with federal law. Each report is devoid of any analysis establishing the required nexus between the costs of efficiently and economically operated facilities and the reimbursement rates under the state system. DIM made assurances to HHS in language that mirrored the applicable statute and regulations. Year after year, DIM assured HHS "that the payment rates for acute care inpatient hospitals [were] reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." However, this neither amounted to a finding nor established the requisite nexus. "Mere recitation of the wording of the federal statute is not sufficient for procedural compliance." *AMISUB,* 879 F.2d at 797.

Undisputed evidence reveals the inadequacy of defendants' findings for fiscal years 1987 through 1991. DIM's cost analyst testified that he was not aware of any document

articulating DIM's views on the definition of efficiently and economically operated facilities. DIM did not comply with federal law in fiscal years 1987 through 1991.

Once embroiled in the pending litigation, DIM took a new approach to the findings requirement. For fiscal years 1992 and 1993, DIM included in its annual report the rates of increase attributable to each facility. The findings also included a statement noting in vague terms that the average rate of increase was "clearly in excess of any measure of inflation." DIM's findings for fiscal years 1992 and 1993 still failed to address the critical question: What were the costs incurred by efficient and economical facilities? Absent this determination, DIM could not establish a nexus between the operational costs of such facilities and the reimbursement rates under the state system. *Pinnacle*, 928 F.2d at 1315. It may be that the rates of increase exceeded the rate of inflation in these two years. Nonetheless, it is also conceivable that the costs incurred by efficient and economical facilities increased at a rate above inflation. Moreover, it is unclear whether rate increases prior to 1991 kept pace with inflation in the first place. In short, the annual reports for fiscal years 1991 and 1992 create as many questions as they answer. *See Temple Univ. v. White*, 941 F.2d 201, 210 (3d Cir.1991) (internally generated reports regarding rate structure are not sufficient to meet the findings requirement), *cert. denied*, —— U.S. ——, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992).

After plaintiffs filed their motion for partial summary judgment but before defendants' response thereto, DIM issued its findings for fiscal year 1994 in a report dated September 30, 1993. The report asserts that the Connecticut system follows federal law, i.e., it incorporates TEFRA and Medicare reasonable cost principles. Just as defendants have contended throughout this litigation, the report in essence asserts that the system is self-validating and presumptively in compliance with federal law. This report may well be the kind of post-hoc rationalization that courts have recently condemned. *Rye*, 768 F.Supp. at 87. In any event, the

report's premise is faulty for two principal reasons.

First, echoing shortcomings of the past, the report fails to properly identify efficiently and economically operated facilities. The report states that the reimbursement system itself determines efficient and economical facilities. In other words, if a given hospital is not fully reimbursed for its Medicaid costs, then that hospital is inefficient and uneconomical. However, in the last three years, just one hospital may have received full reimbursement for Medicaid costs. Is it possible that only one in thirty-three general hospitals in Connecticut is efficiently and economically operated? Perhaps so, but the undisputed facts suggest that the system is inadequate to meet the reimbursement requirements of the Boren Amendment. *Michigan Hosp. v. Babcock*, 736 F.Supp. 759, 763 (W.D.Mich.1990) ("[i]t is hard to give credence to the idea that only 14 out of 182 hospitals ... are economically and efficiently operated.").

Second, DIM's position is circular. DIM relies on the operation of its system to fulfill its obligation to make findings. Yet the findings themselves must first justify the system. *Multicare Medical Center v. Washington*, 768 F.Supp. 1349, 1393 (W.D.Wash.1991). The purpose of the findings requirement is to develop a basis upon which a state can assure HHS that the state's system complies with the Boren Amendment. *AMISUB*, 879 F.2d at 796. Without adequate findings, DIM cannot assume that its system yields results that comply with the Boren Amendment. *Abbeville Gen. Hosp. v. Ramsey*, 3 F.3d 797, 808 (5th Cir.1993) (under the circumstances, hospital's ability to keep costs below state's target rate was not tantamount to efficient and economical operation). DIM has put the cart before the horse.

Even the litigation-driven findings for fiscal year 1994 fail to establish a nexus between the costs of efficiently and economically operated facilities and the reimbursement rates under the state system. From 1983 to the present, DIM has not complied with the procedural requirements of the Boren Amendment and its implementing regula-

tions. Summary judgment should enter in favor of the plaintiffs on Count II.

### 2. *Validity of Defendants' Affirmative Defenses*

■ Plaintiffs have moved for summary judgment on each of defendants' affirmative defenses. The first affirmative defense asserts that "Medicaid statutes do not create legally enforceable rights in the plaintiffs...." This defense is predicated on defendants' concomitant argument that this court should ignore the decision by the United States Supreme Court in *Wilder*, 496 U.S. at 498, 110 S.Ct. at 2510. Defendants' first affirmative defense is fatally flawed. This court has no authority to circumvent a clear pronouncement of the United States Supreme Court. "The Boren Amendment to the Act creates a right, enforceable in a private cause of action pursuant to 42 U.S.C. § 1983, to have the State adopt rates that it finds are reasonable and adequate to meet the costs of an efficient and economical health care provider." *Id.* at 524, 110 S.Ct. at 2525.

The remaining affirmative defenses in essence claim that Connecticut's reimbursement system is adequate and in compliance with federal law. These defenses are identical to the arguments put forth by defendants in their motion for summary judgment. The court will rest its ruling on the following brief analysis of defendants' motion for summary judgment.

### C. *Defendants' Motion for Summary Judgment*

■ Defendants have moved for summary judgment on all four counts of plaintiffs' complaint. The court has found that plaintiffs are entitled to judgment on Count II. With respect to Count II, therefore, defendants' motion for summary judgment will be denied.

The remaining counts, Counts I, III, and IV, involve claims that Connecticut's reimbursement system substantively violates the Boren Amendment. The common denominator in these counts is that the state's system allegedly is not reasonable to meet the costs which must be incurred by an efficiently and economically operated facility. In their motion for summary judgment, defendants urge the court to reject the plaintiffs' claims as a matter of law.

At this point in the litigation, substantive consideration of the state's reimbursement system would be premature. The validity of defendants' contentions will depend on the substance of the required findings. This court cannot fully evaluate the adequacy of the state's reimbursement system, absent a record establishing an "objective benchmark of an efficiently and economically operated facility." *Wilder*, 496 U.S. at 519, 110 S.Ct. at 2523. A system that complies with the Boren Amendment is one that provides reimbursement "reasonable to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A). Review of the substantive adequacy of Connecticut's reimbursement system must await procedural compliance with the Boren Amendment. *Pinnacle*, 928 F.2d at 1314, *Rye Psychiatric*, 768 F.Supp. at 89; *see also Abbeville*, 3 F.3d at 804 (only when findings are adequate can a court proceed to the issue of substantive compliance).

## IV. CONCLUSION

For the reasons set forth herein, plaintiffs' motion for partial summary judgment is GRANTED as to Count II and as to defendants' first affirmative defense. Defendants' cross-motion for summary judgment is DENIED, except that defendants may renew the motion for summary judgment on Counts I, III and IV *after* they have cured their procedural violation of the Boren Amendment.