46 F.3d 211
 46 Soc.Sec.Rep.Ser. 503, Medicare & Medicaid Guide
P 43,063
CONNECTICUT HOSPITAL ASSOCIATION, William W. Backus
Hospital, Bradley Memorial Hospital & Health Care Center,
Bridgeport Hospital, Bristol Hospital, Danbury Hospital, Day
Kimball Hospital, Greenwich Hospital Association, Griffin
Hospital, Hartford Hospital, Charlotte Hungerford Hospital,
Johnson Memorial Hospital, Lawrence & Memorial Hospital,
Manchester Memorial Hospital, Milford Hospital, Mount Sinai
Hospital, New Britain General Hospital, New Milford
Hospital, Norwalk Hospital, Park City Hospital, Rockville
General Hospital, Saint Francis Hospital & Medical Center,
St. Joseph's Medical Center, St. Mary's Hospital, Hospital
of St. Raphael, St. Vincent's Medical Center, Sharon
Hospital, Stamford Hospital, The Waterbury Hospital, Winsted
Memorial Hospital, World War II Veterans Memorial Hospital,
Yale-New Haven Hospital, Plaintiffs-Appellees,
v.
Lowell P. WEICKER, Jr., Governor of the State of
Connecticut, Audrey Rowe, Commissioner of the Department of
Social Services of the State of Connecticut, Donna Shalala,
Secretary of the Department of Health & Human Services,
Defendants-Appellants.
 Nos. 608, 609, Dockets 94-6112, 94-6150.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 23, 1994.
Decided Jan. 30, 1995.
 
 Mark R. Kravitz, New Haven, CT (Alan G. Schwartz, Maureen Weaver, Wiggen & Dana, New Haven, CT, of counsel), for plaintiffs-appellees.
 Arnold I. Menchel, Asst. Atty. Gen. (Richard Blumenthal, Atty. Gen., Richard J. Lynch, Asst. Atty. Gen., Phyllis E. Hyman, Asst. Atty. Gen., Hartford, CT, of counsel), for defendants-appellants Lowell P. Weicker, Jr. & Audrey Rowe.
 Matthew M. Collette, Atty., Appellate Staff, Civil Div., U.S. Dept. of Justice (Frank W. Hunger, Asst. Atty. Gen., Christopher F. Droney, U.S. Atty., Anthony J. Steinmeyer, Atty. Appellate Staff, Civil Div., U.S. Dept. of Justice, Washington, DC, of counsel), for defendant-appellant Donna E. Shalala.
 Before: PRATT, ALTIMARI, and JACOBS, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 Plaintiffs Connecticut Hospital Association and 33 of its member hospitals, all acute care facilities (collectively "the hospitals"), allege that Connecticut's program for reimbursement of Medicaid hospital charges violates a provision in the Medicaid Act (the "Act"), and thereby short-changes them. The United States District Court for the District of Connecticut (Eginton, J.) bifurcated the proceedings, hearing first the hospitals' allegation that the state's program violates a procedural requirement of the Act, and reserving for later proceedings the various substantive claims involved in this suit. After briefing and a hearing on cross-motions for summary judgment, the district court concluded that Connecticut was in violation of the Boren Amendment to the Act, which requires that state payments for hospital services be made at rates that "the State finds" reasonable and adequate to meet costs that "efficiently and economically operated facilities" would necessarily incur. Holding that Connecticut had failed to make the "findings" required by the Boren Amendment, the district court granted partial summary judgment to the hospitals, declared Connecticut's program "null and void," and ordered remedial relief. The district court denied the various parties' motions for summary judgment on all other claims and defenses. This appeal from the order of partial summary judgment and the ensuing preliminary injunction is taken by defendants Weicker and Rowe (collectively "Connecticut"), and Shalala, the Secretary of the United States Department of Health and Human Services (the "Secretary"). We now reverse the grant of summary judgment, vacate the preliminary injunction and remand for the proceedings contemplated by the district court's bifurcation order.
 
 Background
 
 2
 A. Statutory Background.
 
 
 3
 The Medicaid Act, 42 U.S.C. Secs. 1396 et seq., enacted in 1965, created a joint federal and state cost-sharing program to finance medical services to indigent people. Participation by a state in this program is voluntary; however, states that elect to participate must abide by the mandates and restrictions of the Act and the regulations promulgated thereunder by the Secretary. See Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990).
 
 
 4
 To qualify for participation in the Medicaid program, a state must formulate a plan, and submit it to the Secretary for her approval. 42 U.S.C. Sec. 1396a(b). After the plan is approved, the federal government then reimburses the state for a percentage of the program's expenses, including administrative costs and other program-related expenses. 42 U.S.C. Sec. 1396b(a); 42 C.F.R. Secs. 433.151(b), 431.250(b)(2).
 
 
 5
 Until 1980, the Act required all participating states to formulate plans that would reimburse providers for the "reasonable cost" of services actually provided to Medicaid patients. See Wilder, 496 U.S. at 505-06, 110 S.Ct. at 2515-16. This process of paying bills that are rendered--called a "retrospective" standard in social services argot--proved over time to be "inherently inflationary," containing "no incentives for efficient performance." S.Rep. No. 139, 97th Cong., 1st Sess. 478 (1981). In order to give states more flexibility to rein in costs through alternative reimbursement strategies not permitted under the existing Act, Congress enacted the Boren Amendment. Pub.L. No. 96-499, Sec. 962(a), 94 Stat. 2599, 2650 (1980). The Amendment, which was applicable initially to nursing and intermediate care facilities only, was made applicable to hospitals in 1981. Pub.L. No. 97-35, Sec. 2173, 95 Stat. 357, 808 (1981). Although the states thereby achieved some latitude in devising reimbursement plans, the Boren Amendment requires that a state's Medicaid plan provide reimbursement to providers at rates which the state finds "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities...." 42 U.S.C. Sec. 1396a(a)(13)(A). The Supreme Court has held that this language creates "a substantive right to reasonable and adequate rates." Wilder, 496 U.S. at 510, 110 S.Ct. at 2517.
 
 
 6
 After enactment of the Boren Amendment, many states adopted new Medicaid programs that were based upon prospective reimbursement systems, whereby providers are paid in advance based on estimates of what medical care should cost "efficiently and economically operated facilities." See Wilder, 496 U.S. at 507 & n. 7, 110 S.Ct. at 2516 & n. 7. Connecticut is one of the few states that continue to use the retrospective "reasonable cost" system for Medicaid reimbursement. This "reasonable cost" system, which had been the sole method allowed prior to the Boren Amendment, is based upon the federal Medicare program (the "Medicare principles"). The Secretary has promulgated an upper limit regulation, which provides that "aggregate payments by an agency to each group of health care facilities ... may not exceed the amount that can reasonably be estimated would have been paid for those services under Medicare payment principles." 42 C.F.R. Sec. 447.272. Because the Medicare principles are used to compute the upper limit for payments to any particular group of providers, and because Medicaid plans approved under these principles were "subjected to a more rigorous statutory standard," the Secretary has determined that a state Medicaid plan that was previously approved under the old "reasonable cost" system, or one which expressly adopts Medicare principles of reimbursement, would be in compliance with the mandates of the Boren Amendment. See 48 Fed.Reg. 56046, 56047 (1983).
 
 
 7
 Certain other regulations promulgated under the Boren Amendment are implicated in this appeal as well. Each participating state must make certain findings "[w]henever the Medicaid agency makes a change in its methods and standards, but not less often than annually...." 42 C.F.R. Sec. 447.253(b). Among other things, the state must find that its payment rates "are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated providers...." 42 C.F.R. Sec. 447.253(b)(1)(i). In addition, public notice must be provided in respect of "any significant proposed change in its methods and standards for setting payment rates...." 42 C.F.R. Sec. 447.205(a). No such notice is required, however, if "[t]he change is being made to conform to Medicare methods or levels of reimbursement." 42 C.F.R. Sec. 447.205(b)(1).
 
 
 8
 Among other wheels within these wheels: in 1982, Congress enacted the Tax Equity and Fiscal Responsibility Act, Pub.L. No. 97-248, 96 Stat. 324 (1982) ("TEFRA"). Without altering the retrospective "reasonable cost" structure of the Medicare principles, TEFRA imposed a cap on the annual percentage rate of increase in payments authorized pursuant to that formula. See Episcopal Hosp. v. Shalala, 994 F.2d 879, 881 (D.C.Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 876, 127 L.Ed.2d 73 (1994). TEFRA assigns each hospital a "target amount" computed by reference to that hospital's allowable costs in the "base year" of 1982, as adjusted by limited payment increases for each succeeding year. 42 U.S.C. Sec. 1395ww(b)(3). The "target amount" is enforced by incentives: hospitals that fail to keep costs within the "target amount" for a given year are denied full reimbursement, while hospitals that reduce costs below the "target amount" become eligible for bonuses. Id. at Sec. 1395ww(b)(1). TEFRA also creates a mechanism for hospitals to seek an adjustment to its rates to account for such exigencies as a change in patient population (that, for example, brings a larger number of indigent patients to its doors), an increase in costs due to treatment of larger numbers of patients suffering from debilitating diseases, or a significant increase in labor costs. See id. Sec. 1395ww(b)(4); 42 C.F.R. Sec. 413.40(f)-(g).
 
 
 9
 Connecticut's Medicaid program calculates reimbursement rates according to Medicare principles, as adjusted by TEFRA. Thus Connecticut first computes each hospital's allowable costs under the Medicare principles, Conn.Agencies Regs. Sec. 17-312-101, and then computes the hospital's current TEFRA target amount, using the hospital's 1982 costs as the base year. If the allowed Medicare costs are less than the TEFRA target amount, the hospital receives a payment equal to its Medicare allowable costs plus an incentive payment. If, on the other hand, the allowable costs exceed the TEFRA target, the hospital is reimbursed at the target amount plus some "add on" payment. Conn.Agencies Regs. Sec. 17-312-104. Consistent with TEFRA, Connecticut's plan permits a hospital to apply for an upward adjustment to its TEFRA rate limits, upon a showing of any of the exigent circumstances specified in TEFRA. Conn.Agencies Regs. Secs. 17-312-102(h), 105. None of the plaintiff hospitals has used this mechanism to apply for an upward adjustment in its Medicaid reimbursements.
 
 
 10
 At oral argument, counsel for the hospitals asserted that TEFRA no longer impacts Medicaid reimbursements to the plaintiff hospitals, now that Congress has adopted a new Medicare system known as the Prospective Payment System. See 42 U.S.C. Sec. 1395ww(d). We take no position on whether TEFRA applies to some or all of the plaintiffs in this case, either now or at some time in the past that might be relevant to the issues presented. Congress has provided a four-year transition period for implementing the Prospective Payment System, and also has--either directly or through the Secretary--exempted numerous hospitals from this new regime. The impact if any of the Prospective Payment System on individual hospitals, or on the hospitals as a group, has not been the subject of findings or conclusions by the district court, and has not been briefed by the parties on appeal. We ultimately conclude that the preliminary injunction cannot be affirmed on the basis of the statutory scheme presumed applicable to these parties by the district court when it granted the relief. For purposes of this appeal, that is enough. The impact if any of the Medicare Prospective Payment System will await consideration in the first instance by the district court.
 
 
 11
 B. Procedural History of This Case.
 
 
 12
 The hospitals filed this action in December 1990, initially naming only the state defendants. The State later added the Secretary as a third-party defendant. The first amended complaint, in six counts, seeks declaratory and injunctive relief against Connecticut and the Secretary. Count I alleges a violation of the substantive requirement of the Boren Amendment that the state reimbursement rates be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in providing services to Medicaid patients." Complaint, p 35. Count II alleges a violation of the Boren Amendment provision requiring the state to find "that its reimbursement methodologies and resulting rates meet the Act's standards and to provide assurances to the Secretary of HHS that it has made such findings." Complaint, p 38. Counts III and IV allege, respectively, violations of the "takings" clause of the Fourteenth Amendment, and of 42 U.S.C. Sec. 1983.[1] Complaint, pp 50, 55. Count V generally seeks a declaratory judgment pursuant to 28 U.S.C. Secs. 2201-02. Complaint p 59 ("Plaintiffs seek a declaratory judgment ... that the Connecticut Medicaid inpatient hospital reimbursement methodology is invalid, unlawful and contrary to the Medicaid Act, regulations adopted thereunder, the United States Constitution and 42 U.S.C. Sec. 1983...."). Finally, Count VI seeks declaratory relief against the Secretary, in respect of her upper limit regulation. Complaint, pp 60-69. Evidently, the Secretary was joined as a third-party defendant in the event that it is deemed necessary to rescind the Secretary's upper limit regulation in order to grant complete relief to the hospitals.
 
 
 13
 The defendants filed a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, and the district court referred the matter to Magistrate Judge Thomas P. Smith. The magistrate judge recommended dismissal of the complaint on the ground that Connecticut's Medicaid program complies with the Boren Amendment as a matter of law because it applies federal Medicare principles. The district court declined to accept this recommendation, finding that the factual record was insufficiently developed and that the case should thus be allowed to continue.
 
 
 14
 The district court, in September 1992, entered a pretrial order creating two phases of litigation. First, the parties were ordered "to complete all discovery necessary for cross-motions for summary judgment...." Connecticut Hosp. Ass'n v. O'Neill, 842 F.Supp. 637, 638 (D.Conn.1994). "If necessary, the parties would then proceed to phase two and resolve all remaining issues." Id. On August 31, 1993, the hospitals moved for partial summary judgment on Count II of their complaint, and on November 8, 1993 they added a request for summary judgment on the defendants' affirmative defenses. Connecticut cross-moved for summary judgment on all counts of the complaint. The Secretary offered no argument in response to the hospitals' motion, noting that their motion appeared to seek summary judgment only against Connecticut. Nothing further was filed by the Secretary until this appeal (a backwards approach to the resolution of issues that the Secretary deems significant, and a disservice to the district court).
 
 
 15
 The district court granted summary judgment to the hospitals on Count II of their complaint and in respect of the state's first affirmative defense, which asserted that Wilder incorrectly decided that the Boren Amendment creates substantive rights in medical services providers. O'Neill, 842 F.Supp. at 639-42. It denied the hospitals' request for summary judgment on the state's remaining affirmative defenses, and likewise denied the state's request for summary judgment on the other counts. Id. at 642. In a subsequent, unpublished order dated March 30, 1994, the district court awarded the hospitals preliminary injunctive relief. Specifically, the court declared the state's Medicaid reimbursement plan (in respect of inpatient hospitals) "null and void," ordered the state to formulate and submit new findings concerning the adequacy of its reimbursement program, enjoined the use of the state's current Medicaid formula, and ordered the state to "immediately ... begin reimbursing plaintiff hospitals ... at rates computed by using Medicare reasonable cost principles ..."--i.e., Medicare principles without TEFRA limits. In addition, the court ordered the hospitals to post an injunction bond to cover the difference between what reimbursement would be under the state's system and what would be disbursed pursuant to the court's order.
 
 
 16
 Connecticut now appeals from the district court's injunction and the underlying grant of summary judgment on Count II of the complaint. The Secretary has joined this appeal, filing a separate brief, in order to vindicate the federal government's interest in avoiding the financial consequences of the district court's orders. We have jurisdiction under 28 U.S.C. Sec. 1292(a)(1).
 
 Discussion
 
 17
 This appeal turns on a narrow question of law: Did Connecticut make findings sufficient to support assurances to the Secretary that it was in compliance with the Boren Amendment? This is purely a procedural issue. The substantive issues are the subject of the second phase of the litigation, which presumably will progress to trial after a full development of the factual record. None of the substantive issues are before us at this time.
 
 
 18
 Although we review the district court's issuance of injunctive relief for abuse of discretion, King v. Innovation Books, 976 F.2d 824, 828 (2d Cir.1992), we review the underlying grant of summary judgment de novo. Levin v. Analysis & Technology, Inc., 960 F.2d 314, 316 (2d Cir.1992).
 
 
 19
 The Boren Amendment requires the state to provide (in relevant part):
 
 
 20
 for payment ... of the hospital services ... provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State ...) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards....
 
 
 21
 42 U.S.C. Sec. 1396a(a)(13)(A) (emphasis added). The underscored language presents the issue in this appeal.
 
 
 22
 The Supreme Court in Wilder held that this language creates a substantive right in the hospitals--enforceable through Sec. 1983--to a level of reimbursement. See 496 U.S. at 509-10, 110 S.Ct. at 2517-18. Although the hospitals allege violations of those substantive requirements, those requirements are not at issue here. Count II of the complaint alleges that Connecticut failed to make adequate findings; and it is the district court's verdict of dereliction in this respect alone that furnished the ground for the grant of partial summary judgment and the ensuing temporary injunction. The sole question, therefore, is what findings are required of Connecticut in this case.
 
 
 23
 In construing the Boren Amendment, we do not write on a clean slate. This court had occasion several years ago to pass on this provision as it related to New York's Medicaid program. See Pinnacle Nursing Home v. Axelrod, M.D., 928 F.2d 1306 (2d Cir.1991). In that case, we held that "the state must make findings which establish a nexus between the costs of operating efficient and economic ... facilities and the proposed reimbursement rates under the state plan. While the method used by the state in formulating these findings admits some flexibility, it is an absolute necessity that such findings be made." Id., at 1314-15 (citing, inter alia, Wilder, 496 U.S. at 507, 110 S.Ct. at 2516). Connecticut has made different findings in various past years, and in some years made none. Although the district court took time to analyze and discuss the findings--or lack thereof--in various past years, we conclude that, because the Eleventh Amendment bars retrospective monetary relief from the state, the findings with respect to any year other than the current year are irrelevant.
 
 
 24
 The only findings made by Connecticut in respect of the current year reimbursements are that its Medicaid reimbursement program for inpatient hospitals adopts and applies the federal Medicare principles, as modified by TEFRA. The district court held that these findings were insufficiently detailed to meet the statutory requirements of the Boren Amendment. O'Neill, 842 F.Supp. at 640. In so doing, the district court relied on language from Pinnacle, quoting the Tenth Circuit in Amisub (PSL), Inc. v. State of Colo. Dep't of Social Services, 879 F.2d 789, 796 (10th Cir.1989), cert. denied, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990), to the effect that the Boren Amendment requires the state
 
 
 25
 'to make 'findings' which identify and determine (1) efficiently and economically operated hospitals; (2) the costs that must be incurred by such hospitals; and, (3) payment rates which are reasonable and adequate to meet the reasonable costs of ... [such] hospitals....'
 
 
 26
 Pinnacle, 928 F.2d at 1314. This language states the rule for the line of cases, such as Pinnacle and Amisub, in which the state has crafted its own Medicaid reimbursement program. Since the great majority of states have done this, the rule of Pinnacle has broad application. We hold, however, that no such requirements exist in cases, such as this appeal, in which the Medicaid reimbursement is governed (as we assume) by Medicare principles.
 
 
 27
 In Pinnacle, the question presented was whether New York had complied with the Boren Amendment in making a change to its Medicaid reimbursement program. Unlike Connecticut, however, New York's Medicaid program was one of its own devising; in other words, it did not simply adopt the federal Medicare principles. Moreover, New York apparently made no findings at all--"it [was] apparent that the 1987 Adjustment was little more than a policy decision to reimburse high cost facilities unsupported by any findings whatsoever." Pinnacle, 928 F.2d at 1315 (emphasis added). Because of the failure to make findings, we held in Pinnacle that the assurances given to the Secretary, which merely incanted that the state's program provided adequate reimbursement to efficient providers, "failed to satisfy the requirements of the Act and the regulations promulgated thereunder." Id. at 1315-16 (citing 42 U.S.C. Sec. 1396a(a)(13)(A); 42 C.F.R. Sec. 447.253). Moreover, the holding in Pinnacle was "buttressed by the fact that [the agency] has stood mute during this appeal. Had [it] believed that the 1987 Adjustment complied with the Act, we assume that it would have joined this appeal." Id. at 1316. Accordingly, we held that New York failed to comply with the procedures mandated by the Boren Amendment for obtaining approval of the state's plan by the Secretary, and that the plan was "null and void." Id.
 
 
 28
 Two reported circuit court opinions address the application of the Boren Amendment's procedural requirements to a state Medicaid plan that simply adopts the federal Medicare principles. See Alabama Hosp. Ass'n v. Beasley, 702 F.2d 955 (11th Cir.1983); Charleston Mem. Hosp. v. Conrad, 693 F.2d 324 (4th Cir.1982). In each case, the court held that a state that continues to follow the pre-Boren retroactive "reasonable cost" payment method of the federal Medicare laws is, as a matter of law, in compliance with the requirements of the Boren Amendment. See Beasley, 702 F.2d at 958 ("rates properly approved under the reasonable cost standard will satisfy the new efficient cost standard [of the Boren Amendment]"); Conrad, 693 F.2d at 331 ("State plans ... which were approved under former law and continue to provide for reimbursement at the highest rate allowed by law, clearly satisfy the less stringent requirements of the new reimbursement statute."). The findings addressed in these opinions pre-date TEFRA, but that circumstance does not undermine the sensible construction of the Boren Amendment. If TEFRA modifies the Medicare principles, we agree with the Secretary that a state may not apply Medicare principles without the computations required by TEFRA. In which event, a finding today that Medicare principles govern Medicaid reimbursement necessarily includes the application of TEFRA. If, as the hospitals contended at oral argument, TEFRA has been supplanted and new mechanisms are at work that favor the hospitals' case, all that can said here and now is that the hospitals are urging an argument other than the one that the district court relied upon in favoring the hospitals' motion for preliminary relief. Finally, although Beasley and Conrad are both pre-Wilder, nothing in Wilder calls into question their analysis or holding. The Court in Wilder reviewed precedents without discussing these cases, other than to note that these cases, like many others, entertained challenges to the Boren Amendment "without separately considering whether the providers had a cause of action under Sec. 1983." Wilder, 496 U.S. at 518 n. 16, 110 S.Ct. at 2522 n. 16. This reinforces our view that Wilder and Pinnacle concern the findings needed when a state adopts a Medicaid reimbursement plan of its own devising; and Beasley, Conrad and this present appeal from Connecticut concern the findings needed when a state adopts Medicare principles to compute Medicaid reimbursement.
 
 
 29
 In short, the district court's reliance on Pinnacle ignored several root distinctions. New York's Medicaid system is one of its own design, while Connecticut expressly chooses to follow the federal Medicare principles, as modified by TEFRA. New York made no findings under the Boren Amendment, while Connecticut found that its reimbursement comports with Medicare principles, and--relying on the Secretary's determination that such principles comply with the Boren Amendment, see 48 Fed.Reg. 56046, 56047 (1983)--issued its assurances to the Secretary that its program reimbursed hospitals at rates "reasonable and adequate to meet the costs" of efficiently run hospitals.
 
 
 30
 That these distinctions are material to this appeal can be understood by looking to a case decided by the Tenth Circuit after its opinion in Amisub, which characterizes Amisub as an "extreme case," because "the district court [in Amisub had] found that some Colorado hospitals were efficiently and economically operated and that 'all hospitals [were] reimbursed only about half of their reasonable costs.' " Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social & Rehabilitation Services, 958 F.2d 1018, 1022 (10th Cir.1992) (quoting Amisub, 879 F.2d at 799). In Amisub, the state had formulated its own program, and "solely because of budgetary concerns, [it] reimbursed the hospitals at fifty-four percent of the cost level it previously had determined was adequate for efficiently operated hospitals. Therefore, from this information alone, it was clear that Colorado was not 'meeting the costs' of those facilities that it determined were efficiently operated." Id. Under those circumstances, the Amisub court was "able to make a cursory review of [the] state's Medicaid reimbursement program and determine that reimbursements rates" were not adequate to satisfy the Boren Amendment. Id.
 
 
 31
 We attach critical importance to Connecticut's election to continue applying the federal Medicare principles to its Medicaid program even after the Boren Amendment opened the door to state-by-state design of reimbursement systems. We are influenced in this by the Secretary's view that such programs comply as a matter of law with the Boren Amendment. See 48 Fed.Reg. 56046, 56047 (1983). "An agency's interpretation of a statute that the agency administers is entitled to considerable deference; a court may not substitute its own reading unless the agency's interpretation is unreasonable." Skandalis v. Rowe, 14 F.3d 173, 178 (2d Cir.1994) (citing Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc., 470 U.S. 116, 125, 105 S.Ct. 1102, 1107-08, 84 L.Ed.2d 90 (1985); Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984)). Adherence to this doctrine is "even more appropriate where, as here, we consider a small corner of a labyrinthine statute." Id. Where the agency has advanced its interpretation, and where, as here, the meaning of that statute is ambiguous, " 'we must defer to the agency's resolution of the matter if it is based on a permissible construction of the statute and is sufficiently reasonable.' " Id. at 179 (quoting Detsel by Detsel v. Sullivan, 895 F.2d 58, 62 (2d Cir.1990) (internal quotation and citation omitted)). No one would contend that this statutory scheme is so intuitive and transparent that administrative input gives no useful guidance. In discussing the ambiguity of the Boren Amendment, the Seventh Circuit has observed that Congress's failure to define a number of key terms created a " 'definitional abyss' " that invites litigation. Illinois Health Care Ass'n v. Bradley, 983 F.2d 1460, 1464 (7th Cir.1993) (quoting Lett v. Magnant, 965 F.2d 251, 253 (7th Cir.1992)).
 
 
 32
 The reasonableness of the Secretary's interpretation rests upon her upper limit regulation: federal Medicare principles, as adjusted by TEFRA, form the upper limit to a state's aggregate payments. 42 C.F.R. Sec. 447.272. The Secretary and Connecticut argue that, since Connecticut reimburses hospitals according to the federal principles that mark the upper limit of what it can pay, its finding to that effect is sufficient to demonstrate that it can adopt no program that would permit it to pay more. Accepting the Secretary's view of the scheme she administers, it will make no sense for Connecticut to engage a bureaucracy to identify "economically and efficiently" run hospitals, and to compare the allowable costs of those hospitals to the payments under the current regime. One benefit accruing to states that adopt federal Medicare principles is that they avoid the costs of creating and administering individual Medicaid reimbursement systems. The preliminary injunction would in substantial measure deprive Connecticut of this advantage.
 
 
 33
 The hospitals refute the idea that Connecticut's payments are the maximum allowable under the existing scheme, and point to an adjustment mechanism in TEFRA that permits states to raise the reimbursement level by updating the "base year." By the same token, however, the Connecticut plan (adopting TEFRA) permits individual hospitals to apply for base year adjustments; yet none of the plaintiff hospitals has made such an application. Instead, it appears that these hospitals have decided to act jointly to compel the state--through this litigation--to make a universal change to the base year. Where administrative options exist to obtain relief, the election instead to litigate a matter is at best questionable. See Reiter v. Cooper, --- U.S. ----, ----, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993) ("Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed."); see generally McCarthy v. Madigan, 503 U.S. 140, 143-47, 112 S.Ct. 1081, 1086-87, 117 L.Ed.2d 291 (1992). However, in the unusual and tentative procedural state of this case, we simply note that this consideration is one to be considered in balancing the equities should the district court determine, after a fuller exposition of the factual record, that injunctive relief is warranted.
 
 
 34
 Since we vacate the preliminary injunction, we do not reach arguments concerning the propriety of the forms of relief ordered by the district court (except to the extent that such relief is affected by our discussion).
 
 Conclusion
 
 35
 For the reasons stated, we reverse the grant of summary judgment to the hospitals and vacate the preliminary injunction. This case is remanded to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The Supreme Court held, in Wilder, that the Boren Amendment created a private right of action for health care providers to sue, under Sec. 1983, for substantive violations of that law. See Wilder, 496 U.S. at 510, 110 S.Ct. at 2517-18